IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICE OF VIRGINIA
(RICHMOND DIVISION)

| | |
|---|---|
| Michael C. Hild, <br><br> Plaintiff, <br><br> v. <br><br> Dan Foster, et al. <br><br> Defendants. | Civil Action No. 25-cv-01050-DJN |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
<u>DEFENDANT GLEN HADDOCK'S MOTION TO DISMISS</u>**

**I.      INTRODUCTION**

Plaintiff Michael C. Hild, through this lawsuit, seeks to hold everyone but himself accountable for losses occasioned by his fraudulent criminal scheme to inflate the value of a portfolio of reverse-mortgage bonds held by Live Well Financial, Inc. ("Live Well"), a company he was responsible for driving into bankruptcy.

The Complaint identifies as its sole claim a business conspiracy concerning Live Well, in which Plaintiff Michael C. Hild had an ownership interest and for which he acted as chief executive officer. On June 10, 2019, Live Well's lenders, including several of the defendants in this matter, filed a petition for the Chapter 7 involuntary bankruptcy of Live Well in the U.S. Bankruptcy Court for the District of Delaware. In August 2019, the U.S. Attorney's Office's for the Southern District of New York announced that it had indicted Mr. Hild, along with Live Well's former chief financial officer, Eric Rohr, and its former head trader, Darren Stumberger, for their participation in

> a scheme to deceive Live Well's lenders by fraudulently inflating the value of its mortgage-backed bonds by over $140 million.  This allegedly enabled Live Well to borrow money well over the value of the collateral it put up.  In turn, Hild used these ill-gotten funds to gain control of the company and increase his own compensation by nearly 700 per cent, while exposing lenders cumulatively to $65 million in unsecured loans to the company, which is now in bankruptcy.

DOJ, Press Release: Former CEO Of Live Well Financial Charged In $140 Million Bond Fraud Scheme (Aug. 29, 2019), https://www.justice.gov/usao-sdny/pr/former-ceo-live-well-financial-charged-140-million-bond-fraud-scheme.[1] Rohr and Stumberger pleaded guilty and cooperated with the government's investigation. *Id.* On April 30, 2021, a criminal jury convicted Plaintiff on five counts of fraud. The U.S. Court of Appeals for the Second Circuit affirmed Plaintiff's criminal convictions on July 30, 2025.

Plaintiff's conviction on five counts of fraud arose from actions he took as Live Well's CEO from September 2015 to December 2018. In December 2018, Defendant Glen Haddock assumed Live Wells' chief financial officer ("CFO") position to fill the vacancy of its former CFO, Eric Rohr, whom the USAO later indicted and who pleaded guilty to five counts of fraud. Plaintiff filed this Complaint on December 23, 2025, about five months after his conviction was affirmed.

## II.     DEFENDANT REQUESTS JUDICIAL NOTICE OF CERTAIN DOCUMENTS

Because Plaintiff's claim concerns the foregoing adjudicated matters, Defendant asks the Court to take judicial notice of the USAO's actions and the Bankruptcy Court action. He submits

---

[1] In a parallel civil action, filed on August 29, 2019, the U.S. Securities and Exchange Commission alleged that Plaintiff was liable for securities fraud in violation of Sections 17(a)(1)-(3) of the Securities Act, Section 10(b) of the Exchange Act and Rules 10b-5(a)-(c) thereunder, as a control person for Live Well's fraud under Section 20(a) of the Exchange Act, and aiding and abetting fraud violations under Section 17(a) of the Securities Act, when Live Well, at Plaintiff's direction, had fraudulently inflated the value of its portfolio of complex reverse-mortgage bonds. *See* Press Release: SEC Charges Private Lender and CEO with Fraudulent Mismarking Scheme (Aug. 29, 2019) (the Press Release links to the filed Complaint), https://www.sec.gov/newsroom/press-releases/2019-166. On September 19, 2023, Plaintiff settled with the SEC and consented to a final judgment which, among other things, enjoined him from violating the antifraud provisions of the securities laws, banned him from serving as an officer or director of a public company, and ordered disgorgement of ill-gotten gains in the amount of $22,606,752. Final Judgment as to Defendant Michael C. Hild, *SEC v. Hild*, No. 19-cv-8086-JPC (S.D.N.Y., Sep. 19, 2023), ECF No. 56.

that the true and accurate copies of the documents submitted with this motion and marked as exhibits are not subject to reasonable dispute: the USAO's indictment of Plaintiff ("Indictment"), Exhibit A; the USAO's indictment of Rohr, Exhibit B; the USAO's press release after Plaintiff's conviction on April 30, 2021 ("Release"), Exhibit C; the Court of Appeals' opinion in *United States v. Hild*, No. 23-6136 (2d Cir. 2025), Exhibit D; and the Bankruptcy Court's opinion *In re: Live Well Financial, Inc.*, Case No. 19-11317 (Bankr. Del. June 14, 2023), Exhibit E (collectively, "Exhibits").

The Exhibits disclose that three of Live Well's lenders filed a petition for the involuntary bankruptcy of Live Well under Chapter 7 on June 10, 2019; that Plaintiff had initiated a fraud scheme almost four years earlier, in September 2015, by having a subordinate prepare a spreadsheet showing the effect different market assumptions had on the value of Live Well's bond holdings and its portfolio; that Plaintiff and Live Well's CFO, Eric Rohr, submitted these assumptions to a pricing service that lenders used to value potential financial collateral for their loans; that the assumptions caused the pricing service to increase the apparent value of the portfolio; that lenders relied on the pricing service and extended larger loans to Live Well based on the purported value of the portfolio, that Plaintiff's scheme inflated the "value" of Live Wells' portfolio about 1,000% from a 2014 total of $50 million to a 2016 total of $500 million, and that Plaintiff's scheme unraveled in 2019 when Defendant Haddock,

> who had replaced Rohr as CFO, began to suspect that Live Well's valuations were inflated. In investigating the matter, Haddock learned for the first time that Live Well had been supplying prices to IDC and that it had been modeling the bonds based on assumption that he believed were unrealistic. Convinced that Live Well was overstating the value of its bond portfolio, Haddock ultimately refused to sign the company's financial statements, effectively forcing Live Well to shutter.

(Exhibit D at 10).

III.     **THE COURT LACKS SUBJECT MATTER JURISDICTION**

The Court must determine its jurisdiction before reaching the merits of an action. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006); *Lovern v. Edwards*, 190 F.3d 648 (4th Cir. 1999) (Court's independent duty to assess jurisdiction). The Civil Cover Sheet lists "Federal Question" as the basis of jurisdiction. (ECF 1-2 at 1). The Complaint alleges jurisdiction under 28 U.S.C. § 1331, stating that "resolution of Defendants' anticipated defenses necessarily requires interpretation" of various federal systems, practices, immunity, and litigation-privilege doctrines," (ECF 1 ¶ 10). It also asserts supplemental jurisdiction under 28 U.S.C. § 1367(a) (*Id.* ¶ 11) and does not reference the citizenship or domicile of any party, whether an individual or an entity.

Defendant submits that the Court lacks jurisdiction under 28 U.S.C. § 1331 because the only claim (business conspiracy under Va. Code §§ 18.2-499 and -500) and defenses to it are premised on state law, and it also lacks supplemental jurisdiction under 28 U.S.C. § 1367(a) because it does not have original jurisdiction. *See Lovern v. Edwards*, 190 F.3d 648 (4th Cir. 1999); *Merell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804 (1986), *Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987). For these reasons and because the Complaint does not include information necessary for an alternative jurisdictional basis, it must be dismissed. *See Pinkley, Inc. v. City of Frederick,* 191 F.3d 394 (4th Cir. 1999).

IV.     **THE STATUTE OF LIMITATIONS BARS THE CLAIM**

Defendant also submits that the limitation-of-action provision of Va. Code § 8.01-243(B) bars Plaintiff's claim as to him. This provision states that "every action for injury to property . . . shall be brought within five years after the cause of action accrues," and the Virginia Supreme Court has held that it applies to civil claims based on business conspiracy under Va. Code §§ 18.2-

4

499 and -500. *Dunlap v. Cottman Transmission Systems, LLC*, 287 Va. 207, 222, 754 S.E.2d 313, 321 (2014).

Plaintiff's civil claim for business conspiracy accrued when Live Well went into involuntary bankruptcy in June 2019, as this is when its "enterprise value" and Plaintiff's earnings from Live Well ceased and his ownership interest in Live Well was effectively ended. *Eshbaugh v. Amoco Oil Co.*, 234 Va. 74, 77, 360 S.E.2d 350, 351 (1987) ("A right of action [for business conspiracy] accrues when *any* damage, however slight, is sustained") (citing *Stone v. Ethan Allen, Inc.*, 232 Va. 365, 369, 350 S.E.2d 629, 632 (1986)) (emphasis in original). The Complaint was filed on December 23, 2025, over 6½ years after the filing of the Chapter 7 petition on June 10, 2019.

The Complaint asserts that Va. Code § 8.01-229(D) has tolled the limitations period "until discovery of the concealed conduct" (ECF 1 ¶ 41) because "Defendants concealed pricing inconsistencies and coordinated conduct" (*Id.* ¶ 39), and, on information and belief, "acted jointly to suppress transparency and delay discovery of their wrongdoing." (*Id.* ¶ 40). Section 8.01-229(D), however, applies to situations in which a defendant actively obstructs the filing of a lawsuit, such as by using the bankruptcy stay to prevent a civil action from being filed, or by use of other means "to obstruct the filing of an action." Moreover, "[t]he requisite obstruction 'must consist of some trick or artifice preventing inquiry, or calculated to hinder a discovery of the cause of action by the use of ordinary diligence.'" *Mackey v. McDannald*, 298 Va. 645, 656, 842 S.E.2d 379, 385 (2020). Here Plaintiff, as CEO of Live Well, originated, perpetuated, and was convicted of the fraud in which he now claims Defendant Haddock participated. Assuming for the sake of argument that Defendant Haddock was an active and knowing participant in the fraud led by

5

Plaintiff, then Plaintiff would have been fully aware of this fact and Defendant Haddock could not have tricked or hindered Plaintiff from discovering his role in that alleged fraud in such a way as to delay Plaintiff's discovery of the cause of action. The Complaint does not allege that *Defendant Haddock* filed the bankruptcy petition for Live Well, nor are any facts alleged that show he obstructed Plaintiff's ability to file this action in any way. The accrual-on-discovery statute, Va. Code § 8.01-249(1), which the Complaint does not reference, is only available in actions for fraud, mistake, or actions under the Virginia Consumer Protection Act based upon misrepresentation, deception, or fraud. *See, e.g.*, *Gilmore v. Basic Industries, Inc.*, 233 Va. 485, 487-88, 357 S.E.2d 514, 516-17 (1987).

V.     **THE COMPLAINT FAILS TO STATE ANY CLAIM AGAINST HADDOCK**

On motions to dismiss pursuant to Fed. R. Civ. P. ("FRCP") Rule 12(b)(6), the Court must accept the Complaint's factual allegations as true. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). Federal pleading standards require "a short and plain statement of the claim showing that the pleader is entitled to relief," FRCP 8(a)(2), so as to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Francis v. Giacomelli*, 588 F.3d 186 (4th Cir. 2009). However, a pro se complaint is held to less stringent standards than attorney-drafted pleadings. *Erickson,* 551 U.S. at 94.

Defendant submits that, even under the more lenient standards afforded to pro se litigants, the Complaint in this action fails to state a claim for business conspiracy against Defendant for two reasons: first, it alleges a facts that do not state a theory of *civil business conspiracy* against Defendant, as that claim is understood in Virginia; and second, it does not sufficiently plead all the

6

requisite elements for such a claim. As the Fourth Circuit has noted, "[p]rinciples requiring generous construction of *pro se* complaints are not, however, without limits. *Gordon* directs district courts to construe pro se complaints liberally. It does not require those courts to conjure up questions never squarely presented to them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (referencing to *Gordon v. Leeke*, 574 F.2d 1147, *cert. denied*, 439 U.S. 970 (1978)).

A claim for civil business conspiracy under Va. Code §§ 18-2.499 and 18.2-500 requires a plaintiff to establish, "by clear and convincing evidence . . . that the conspirators acted with legal malice, i.e., 'intentionally, purposely, and without lawful justification.'" *Dunlap v. Cottman Transmission Systems, LLC*, 287 Va. 207, 215, 754 S.E.2d 313, 317 (2014). These unlawful acts must cause, as planned, business damages to plaintiff. *Gallop v Sharp*, 179 Va. 335, 338, 19 S.E.2d 84, 86 (1942) ("No cause of action exists without the resulting injury, and the damage produced must arise as the effective result of the conspiracy."). The business damages must be actual, not speculative or nominal. *Advanced Marine Enters., Inc. v. PRC Inc.*, 256 Va. 106 (1998); *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable*, 108 F.3d 522, 527–28 (4th Cir. 1997). Moreover, "[T]he gist of the civil action of conspiracy is the damage caused by the acts committed in pursuance of the formed conspiracy and not the mere combination of two or more persons to accomplish an unlawful purpose or use unlawful means." *Dunlap*, 287 Va. at 214, 754 S.E.2d at 313 (quoting *Gallo*, 179 Va. at 338, 19 S.E.2d at 86).

As to Defendant Haddock, the Complaint identifies his purported knowledge and actions during and after his employment as Live Well's CFO from December 2018 to June 2019. (ECF 1 ¶ 20). It alleges that while employed as CFO, Defendant prepared and provided bond valuation data in spreadsheets that were re-dated with unchanged values to third-party pricing services and

market participants (*Id.* ¶¶ 20, 28) knowing that the latter would rely on such data. (*Id.* ¶¶ 14, 29, 31).

As for Defendant's post-employment period, Plaintiff alleges that Defendant—allegedly aware that Live Well's "pricing submissions were refreshed, substituted, and relied upon in margin call and loan acceleration processes"—falsely suggested ignorance of the nature, mechanics, and downstream use of the valuation systems (*Id.* ¶ 30), concealed and misrepresented "his own conduct and knowledge," and advanced an incomplete, misleading, and "self-serving" narrative to align himself with adverse actors and to shield himself from personal exposure, knowing that doing so "would shift blame onto Plaintiff" for "consequences arising from conduct in which Haddock himself had materially participated," thereby materially distorting the causal explanation for Live Well's failure. (*Id.* ¶ 32).

Plaintiff's theory of Defendant's liability for business conspiracy is inconsistent with Virginia law. On one hand, the Complaint seems to allege that Defendant was also "culpable" in a fraud scheme that Plaintiff had initiated years before and which was the cause of Live Well's collapse, shortly after Defendant arrived. On the other hand, the Complaint suggests that Defendant's "self-serving" narrative failed to exculpate Plaintiff and Live Well. Under either interpretation, these allegations against Defendant do not support the allegations that Defendant destroyed the "enterprise value" of Live Well (*Id.* ¶ 36), forced Live Well into collapse (*Id.* ¶ 37), or destroyed Plaintiff's ownership interests in and future earnings from Live Well. (*Id.* ¶ 38). Clearly, those consequences arose from Plaintiff's own criminal activity, in combination with the convicted predecessor CFO, non-party Eric Rohr (*see* Exhibit B), which preceded Defendant Haddock's employment with Live Well. Plaintiff's main issue with Defendant Haddock appears to

8

be that he truthfully exposed the scheme perpetuated by Plaintiff and Rohr to the federal authorities who investigated and prosecuted Plaintiff and others.

Plaintiff's theory of Defendant Haddock's liability also fails because it does not allege all or any of the elements required for a business conspiracy claim. The Complaint does not allege a conspiracy involving Defendant because it fails to identify with whom Defendant conspired. *See Fox v. Deese*, 234 Va. 412, 428, 362 S.E.2d 699, 708 (1987). As for conspiracy, it alleges only that "Defendants combined, associated, and mutually undertook a course of conduct to willfully and maliciously injure Plaintiff's business" (ECF 1 ¶ 42). This conclusory, threadbare allegation, coupled with the Complaint's failure to allege facts showing that Defendant Haddock conspired with lenders or others, dooms Plaintiff's claim. In a motion to dismiss, the Court accepts the facts alleged in the Complaint as true, along with reasonable inferences drawn therefrom, but a pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff's Complaint fails this test.

In addition, the Complaint does not allege facts sufficient to infer that Defendant had any intention to destroy Live Well's operations or value without lawful justification. *Commercial Bus. Sys., Inc. v. BellSouth Servs., Inc.*, 249 Va. 39, 47, 453 S.E. 2d 261, 267 (1995) (citing *Greenspan v. Osheroff*, 232 Va. 388, 398-99, 351 S.E. 2d 28, 35-36 (1986)) (where a conspirator has both legitimate and illegitimate motives, the "primary and overriding purpose" must be an illegitimate purpose to injure the plaintiff's business). As to Defendant, the Complaint alleges that his motivation was "self-serving," not that he intended to destroy the company for which he worked.

9

Finally, the Complaint does not allege any specific actions, statements, or non-statements of Defendant that *caused* the financial downfall and collapse of Live Well. Based on the public record, Plaintiff's actions from 2015 to December 2018 caused Live Well to collapse and be placed into bankruptcy. For these reasons, Defendant submits that the Complaint fails to allege at all or sufficiently that Defendant engaged in a business conspiracy that caused Plaintiff's damages.

## VI.    CONCLUSION

For the foregoing reasons, Defendant Haddock respectfully requests that the Court grant his motion to dismiss the claim and Complaint against him in its entirety and with prejudice.

Date: January 30, 2026                                   Respectfully submitted,

/s/ *Adriaen M. Morse Jr.*
Adriaen M. Morse Jr. (VSB No. 38889)
Cory C. Kirchert (VSB No. 36163)
SECIL Law PLLC
1701 Pennsylvania Ave., NW
Suite 200
Washington, DC 20006
amorse@secillaw.com
Tel: (571) 314-5469
ckirchert@secillaw.com
Tel: (703) 405-7974

*Counsel for Defendant Glen Haddock*

## CERTIFICATE OF SERVICE

I hereby certify that on January 30, 2026, a true and accurate copy of the foregoing document was filed through the Court's CM/ECF electronic filing system, which will forward a copy of the same to Plaintiff and counsel of record registered to receive electronic service by operation of the Court's electronic filing system.

Michael C. Hild, pro se
2302 E. Marshall Street
Richmond, Virginia 23223
Tel:(804) 306-4314
michaelchristopherhild@gmail.com

                                              /s/ *Adriaen M. Morse Jr.*
                                              Adriaen M. Morse Jr.