**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(RICHMOND DIVISION)**

| | |
|---|---|
| Michael C. Hild,<br><br>    Plaintiff,<br><br>v.<br><br>Dan Foster, et al.<br><br>    Defendants. | Civil Action No. 25-cv-01050-DJN |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
<u>DEFENDANT GLEN HADDOCK'S MOTION TO DISMISS</u>**

**I.**     **INTRODUCTION**

Plaintiff Michael C. Hild, through this lawsuit, seeks to hold everyone but himself accountable for losses occasioned by his fraudulent criminal scheme to inflate the value of a portfolio of reverse-mortgage bonds held by Live Well Financial, Inc. ("Live Well"), a company he was responsible for driving into bankruptcy.

The First Amended Complaint ("Am. Compl.") alleges a conspiracy concerning Live Well, in which Plaintiff Michael C. Hild had an ownership interest and for which he acted as chief executive officer. On June 10, 2019, Live Well's lenders, including several of the defendants in this matter, filed a petition for the Chapter 7 involuntary bankruptcy of Live Well in the U.S. Bankruptcy Court for the District of Delaware. In August 2019, the U.S. Attorney's Office's for the Southern District of New York announced that it had indicted Mr. Hild, along with Live Well's former chief financial officer, Eric Rohr, and its former head trader, Darren Stumberger, for their participation in

> a scheme to deceive Live Well's lenders by fraudulently inflating the value of its mortgage-backed bonds by over $140 million. This allegedly enabled Live Well to borrow money well over the value of the collateral it put up. In turn, Hild used these ill-gotten funds to gain control of the company and increase his own

    compensation by nearly 700 per cent, while exposing lenders cumulatively to $65 million in unsecured loans to the company, which is now in bankruptcy.

DOJ, Press Release: Former CEO Of Live Well Financial Charged In $140 Million Bond Fraud Scheme (Aug. 29, 2019), https://www.justice.gov/usao-sdny/pr/former-ceo-live-well-financial-charged-140-million-bond-fraud-scheme.[1] Rohr and Stumberger pleaded guilty and cooperated with the government's investigation. *Id.* On April 30, 2021, a criminal jury convicted Plaintiff on five counts of fraud. The U.S. Court of Appeals for the Second Circuit affirmed Plaintiff's criminal convictions on July 30, 2025.

  Plaintiff's conviction on five counts of fraud arose from actions he took as Live Well's CEO from September 2015 to December 2018. In December 2018, Defendant Glen Haddock assumed Live Wells' chief financial officer ("CFO") position to fill the vacancy of its former CFO, Eric Rohr, whom the USAO later indicted and who pleaded guilty to five counts of fraud. Plaintiff filed a complaint on December 23, 2025, about five months after his criminal conviction was affirmed, and the First Amended Complaint on February 2, 2026, after several Defendants had filed motions to dismiss the original complaint.

---

[1] In a parallel civil action, filed on August 29, 2019, the U.S. Securities and Exchange Commission alleged that Plaintiff was liable for securities fraud in violation of Sections 17(a)(1)-(3) of the Securities Act, Section 10(b) of the Exchange Act and Rules 10b-5(a)-(c) thereunder, as a control person for Live Well's fraud under Section 20(a) of the Exchange Act, and aiding and abetting fraud violations under Section 17(a) of the Securities Act, when Live Well, at Plaintiff's direction, had fraudulently inflated the value of its portfolio of complex reverse-mortgage bonds. *See* Press Release: SEC Charges Private Lender and CEO with Fraudulent Mismarking Scheme (Aug. 29, 2019) (the Press Release links to the filed Complaint), https://www.sec.gov/newsroom/press-releases/2019-166. On September 19, 2023, Plaintiff settled with the SEC and consented to a final judgment which, among other things, enjoined him from violating the antifraud provisions of the securities laws, banned him from serving as an officer or director of a public company, and ordered disgorgement of ill-gotten gains in the amount of $22,606,752. Final Judgment as to Defendant Michael C. Hild, *SEC v. Hild*, No. 19-cv-8086-JPC (S.D.N.Y., Sep. 19, 2023), ECF No. 56.

## II.     DEFENDANT REQUESTS JUDICIAL NOTICE OF CERTAIN DOCUMENTS

Because Plaintiff's claims concern the foregoing adjudicated matters, Defendant Haddock asks the Court to take judicial notice of the federal government prosecutions and the Bankruptcy Court action. He submits that the true and accurate copies of the documents submitted with this motion and marked as exhibits are not subject to reasonable dispute: the U.S. Attorney for the Southern District of New York's ("USAO") indictment of Plaintiff ("Indictment"), Exhibit A; the USAO's indictment of Rohr, Exhibit B; the USAO's press release after Plaintiff's conviction on April 30, 2021 ("Release"), Exhibit C; the Second Circuit's opinion in *United States v. Hild*, No. 23-6136 (2d Cir. 2025), Exhibit D; and the Delaware Bankruptcy Court's opinion *In re: Live Well Financial, Inc.*, Case No. 19-11317 (Bankr. Del. June 14, 2023), Exhibit E (collectively, "Exhibits").

The Exhibits disclose that three of Live Well's lenders filed a petition for the involuntary bankruptcy of Live Well under Chapter 7 on June 10, 2019; that Plaintiff had initiated a fraud scheme almost four years earlier, in September 2015, by having a subordinate prepare a spreadsheet showing the effect different market assumptions had on the value of Live Well's bond holdings and its portfolio; that Plaintiff and Live Well's CFO, Eric Rohr, submitted these assumptions to a pricing service that lenders used to value potential financial collateral for their loans; that the assumptions caused the pricing service to increase the apparent value of the portfolio; that lenders relied on the pricing service and extended larger loans to Live Well based on the purported value of the portfolio, that Plaintiff's scheme inflated the "value" of Live Wells' portfolio about 1,000% from a 2014 total of $50 million to a 2016 total of $500 million, and that Plaintiff's scheme unraveled in 2019 when Defendant Haddock,

who had replaced Rohr as CFO, began to suspect that Live Well's valuations were inflated. In investigating the matter, Haddock learned for the first time that Live Well had been supplying prices to IDC and that it had been modeling the bonds based on assumptions that he believed were unrealistic. Convinced that Live Well was overstating the value of its bond portfolio, Haddock ultimately refused to sign the company's financial statements, effectively forcing Live Well to shutter.

Exhibit D at 10.

### III. THE COURT LACKS SUBJECT MATTER JURISDICTION

The Court must determine its jurisdiction before reaching the merits of an action. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006); *Lovern v. Edwards*, 190 F.3d 648 (4th Cir. 1999) (noting a court's independent duty to assess jurisdiction).

Plaintiff's amended complaint asserts subject matter jurisdiction under 28 U.S.C. § 1332(a) "because Plaintiff Michael C. Hild is a citizen of the Commonwealth of Virginia, [and] no Defendant is a citizen of Virginia." Am. Compl., ECF 46 ¶ 16. Under Fourth Circuit precedent, a change in domicile requires physical presence in a new place and the intention to remain. *Swift & Co. v. Licklider*, 7 F.2d 19, 20 (4th Cir. 1925); *Under Seal v. Under Seal*, 230 F.3d 1354 (4th Cir. 2000). In determining a party's intent to remain, the Court must make an individualized inquiry, relying on such factors as voter registration; current residence; the location of real and personal property; location of bank and brokerage accounts; membership in clubs, churches, or other associations; place of employment or business; driver's license and automobile registration; and the state to which a person pays taxes. *Scott v. Cricket Commc'ns, LLC*, 865 F.3d 189, 195 (4th Cir. 2017). Some district courts in the Fourth Circuit have found that of these factors, "voter registration is of 'great importance,' as voting practices 'raise a presumption that the voter is a citizen in the state in which he votes.'" *See, e.g.*, *Gilmore v. Jones*, 370 F. Supp. 3d 630, 647 (W.D. Va. 2019) (citing *Am. Heartland Port, Inc. v. Am. Port Holdings,*

4

*Inc.*, No. 5:11CV50, 2014 WL 1123384, at *5 (N.D. W. Va. Mar. 21, 2014)); *Goode v. STS Loan & Mgmt., Inc.*, No. Civ.A. DKC 2004–0999, 2005 WL 106492, at *7 (D. Md. Jan. 14, 2005).

Defendant Haddock resided in the Commonwealth of Virginia from 2007 until 2025 and, although temporarily residing in North Carolina, intends to return to Virginia. Declaration of Glen Haddock, Exhibit F ¶¶ 1, 5, 12. Defendant is registered to vote in Virginia, where he also has a driver's license. *Id.* ¶ 5. While Haddock is temporarily renting a home in North Carolina, he has no intention to resettle there permanently and intends to return to Virgina. *Id.* ¶ 5. His ties to Virginia are further reflected in his vehicle registrations, bank accounts, and role as Vice President of a Virginia-based ministry, for which he attends regular monthly meetings in Virginia. *Id.* ¶¶ 6-11. Accordingly, Defendant Haddock is still domiciled in Virginia and Plaintiff has no basis to assert diversity jurisdiction under 28 U.S.C. § 1332(a).

In the alternative, Plaintiff also asserts subject matter jurisdiction under 28 U.S.C. § 1331, stating that "Plaintiff's claims necessarily raise substantial and disputed issues concerning securities pricing, broker-dealer duties, and market-data publication." (ECF 46 ¶ 17). Plaintiff also asserts supplemental jurisdiction under 28 U.S.C. § 1367(a) (*Id.* ¶ 18).

Defendant submits that the Court lacks jurisdiction under 28 U.S.C. § 1331 because the claims against Defendant Haddock (business conspiracy under Va. Code §§ 18.2-499 and -500, common-law civil conspiracy, tortious interference with contract, and tortious interference with business expectancy) and defenses to those claims all are matters of Virgina, not federal, law. The Court also lacks supplemental jurisdiction under 28 U.S.C. § 1367(a) because it does not have original jurisdiction. *See Lovern v. Edwards*, 190 F.3d 648 (4th Cir. 1999); *Merell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804 (1986), *Caterpillar Inc. v. Williams*, 482 U.S.

386 (1987). For these reasons and because the Amended Complaint does not include information necessary to find an alternative jurisdictional basis, it must be dismissed. *See Pinkley, Inc. v. City of Frederick,* 191 F.3d 394 (4th Cir. 1999).

IV.     **THE STATUTE OF LIMITATIONS BARS THE PLAINTIFF'S CLAIMS**

Defendant also submits that the limitation-of-action provision of Va. Code § 8.01-243(B) bars Plaintiff's claims as to him. This provision states that "every action for injury to property . . . shall be brought within five years after the cause of action accrues," and the Virginia Supreme Court has held that it applies to civil claims for tortious interference with contract, tortious interference with business expectancy, and business conspiracy under Va. Code §§ 18.2-499 and -500. *Dunlap v. Cottman Transmission Systems, LLC*, 287 Va. 207, 222, 754 S.E.2d 313, 321 (2014). Plaintiff's fourth apparent claim against Defendant Haddock, for "common-law civil conspiracy," similarly falls under § 8.01-243(B)'s five-year statute of limitations, as the underlying claim appears to be, like Plaintiff's other claims, an allegation of injury to property. *See Willard v. Moneta Bldg. Supply, Inc.*, 262 Va. 473, 482, 551 S.E.2d 596, 600 (2001); *Dunlap*, 287 Va. at 220-22, 754 S.E.2d at 320-21.

Plaintiff's civil claims accrued when Live Well went into involuntary bankruptcy in June 2019, as Plaintiff's earnings from Live Well ceased and his ownership interest in Live Well was effectively ended. *Eshbaugh v. Amoco Oil Co.*, 234 Va. 74, 77, 360 S.E.2d 350, 351 (1987) ("A right of action accrues when *any* damage, however slight, is sustained") (citing *Stone v. Ethan Allen, Inc.*, 232 Va. 365, 369, 350 S.E.2d 629, 632 (1986)) (emphasis in original). The original Complaint in this matter was filed on December 23, 2025, over 6½ years after the filing of the Chapter 7 petition on June 10, 2019.

The original Complaint's assertion that Va. Code § 8.01-229(D) tolled the limitations period "until discovery of the concealed conduct" (ECF 1 ¶ 41) because "Defendants concealed pricing inconsistencies and coordinated conduct" (*Id.* ¶ 39), and, on information and belief, "acted jointly to suppress transparency and delay discovery of their wrongdoing." *Id.* ¶ 40. The Amended Complaint no longer contains these assertions but does allege that "[u]ntil in or about April 2021, Plaintiff had no information" regarding certain pricing issues until he "received a single, fragmentary prosecutorial note" about this topic, and "Defendants' conduct and its effects continued after April 2021 and into the present." Am. Compl., ECF 46 ¶¶ 30-34.

Plaintiff may intend to assert that the more cryptic allegations in the Amended Complaint still invoke Section 8.01-229(D)'s tolling provision. However, the statute applies to situations in which a defendant actively obstructs the filing of a lawsuit, such as by using the bankruptcy stay to prevent a civil action from being filed, or by use of other means "to obstruct the filing of an action." Moreover, "[t]he requisite obstruction 'must consist of some trick or artifice preventing inquiry, or calculated to hinder a discovery of the cause of action by the use of ordinary diligence.'" *Mackey v. McDannald*, 298 Va. 645, 656, 842 S.E.2d 379, 385 (2020). Here Plaintiff, as CEO of Live Well, originated, perpetuated, and was convicted of the fraud in which he now claims Defendant Haddock participated. Assuming for the sake of argument that Defendant Haddock was an active and knowing participant in the fraud led by Plaintiff, then Plaintiff would have been fully aware of this fact and Defendant Haddock could not have tricked or hindered Plaintiff from discovering his role in that alleged fraud in such a way as to delay Plaintiff's discovery of the cause of action. The Complaint does not allege that *Defendant Haddock* filed the bankruptcy petition for Live Well, nor are any facts alleged that show he obstructed Plaintiff's ability to file this action in

7

any way. The accrual-on-discovery statute, Va. Code § 8.01-249(1), which the Complaint does not reference, is only available in actions for fraud, mistake, or actions under the Virginia Consumer Protection Act based upon misrepresentation, deception, or fraud. *See, e.g.*, *Gilmore v. Basic Industries, Inc.*, 233 Va. 485, 487-88, 357 S.E.2d 514, 516-17 (1987).

## V. COLLATERAL ESTOPPEL BARS THE PLAINTIFF'S CLAIMS

Plaintiff is collaterally estopped from bringing his civil claims against Defendant Haddock. For collateral estoppel to apply, a proponent must establish (1) that the issue sought to be precluded is identical to one previously litigated; (2) the issue must have been actually determined in the prior proceeding; (3) determination of the issue must have been a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment must be final and valid; and (5) the party against whom estoppel is asserted must have had a full and fair opportunity to litigate the issue in the previous forum. *Sedlack v. Braswell Servs. Grp., Inc.*, 134 F.3d 219, 224 (4th Cir. 1998); *see also*, *Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 217-18 (4th Cir. 2006). To determine whether the issues are identical for collateral estoppel purposes, courts routinely compare the criminal indictment with the civil complaint. *SEC v. LaGuardia*, 679 F. Supp. 3d 34, 40 (S.D.N.Y. 2023). "[T]he elements necessary to invoke collateral estoppel are the same whether a party seeks to use it 'offensively' or 'defensively.'" *Matter of McWhorter*, 887 F.2d 1564, 1567 (11th Cir. 1989).

In Plaintiff's telling, his claims against Defendant Haddock turn on the fact that "Haddock refused to sign Live Well's financial statements, conduct inconsistent with ordinary practice and reflective of contemporaneous knowledge of the impending collapse [of Live Well]." Am. Compl., ECF 46 ¶ 54. He further asserts that Haddock "[wrote] down the value of Live Well's bond

8

portfolio by approximately fifty percent, an action that immediately precipitated margin failures, covenant breaches, and . . . cascading defaults." *Id*. at ¶ 59. What Plaintiff fails to mention is that the prior criminal proceedings against him already determined that Haddock *discovered* Plaintiff's criminal scheme to commit securities and wire fraud by submitting overvalued bond valuations. *See United States v. Hild*, 644 F. Supp. 3d 7, 24 (S.D.N.Y. 2022) ("Haddock eventually learned that Live Well was providing IDC prices, and after evaluating the portfolio on his own, expressed his view to Hild that the bonds were overvalued"); Exhibit D at 109 ("Glen Haddock, who had replaced Rohr as CFO, began to suspect that Live Well's valuations were inflated. In investigating the matter, Haddock learned for the first time that Live Well had been supplying prices to IDC and that it had been modeling the bonds based on assumptions that he believed were unrealistic."). Moreover, Plaintiff was not blindsided by Haddock's relevance to his criminal case; the criminal indictment against states that "the company's [Live Well] interim CFO [Haddock] informed MICHAEL HILD, the defendant, that he would not sign the company's interim financial statements because he believed that the company's carrying value for the HECM IO bond portfolio was significantly overstated." Exhibit A ¶ 46.

Comparing the criminal indictment to the present complaint, Plaintiff had ample opportunity to raise his assertion that Defendant Haddock engaged in a scheme to write down bond valuations. Plaintiff's claims regarding Haddock's intentions are identical to an issue in the prior criminal case, which determined Haddock's intentions as a critical and necessary part of its findings that Hild, Rohr, and Stumberger, not Haddock, had participated in a criminal conspiracy to falsify Live Well's financial statements and defraud its creditors. Further, collateral estoppel applies in cases where a Virginia Business Conspiracy claim mirrors the facts of a prior criminal

9

fraud action. *See AvalonBay Communities, Inc. v. Willden*, No. CIV A 1:08-CV-777, 2009 WL 2431571 (E.D. Va. Aug. 7, 2009), aff'd, 392 F. App'x 209 (4th Cir. 2010) (applying nonmutual offensive collateral estoppel to Virginia Business Conspiracy claim under Va. Code § 18.2-499 based on defendant's prior guilty plea for conspiracy to commit mail fraud). Plaintiff is collaterally estopped from bringing these claims now.

## VI. THE COMPLAINT FAILS TO STATE ANY CLAIM AGAINST HADDOCK

On motions to dismiss pursuant to Fed. R. Civ. P. ("FRCP") Rule 12(b)(6), the Court must accept the Complaint's factual allegations as true. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). Federal pleading standards require "a short and plain statement of the claim showing that the pleader is entitled to relief," FRCP 8(a)(2), so as to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Francis v. Giacomelli*, 588 F.3d 186 (4th Cir. 2009). However, a pro se complaint is held to less stringent standards than attorney-drafted pleadings. *Erickson,* 551 U.S. at 94.

Defendant submits that, even under the more lenient standards afforded to pro se litigants, the Complaint in this action fails to state the elements of any of his four allegations against Defendant. To begin, Plaintiff's claim of business conspiracy fails for two reasons: it does not state a theory of *civil business conspiracy* against Defendant, as that claim is understood in Virginia; and second, it does not sufficiently plead all the requisite elements for such a claim. As the Fourth Circuit has noted, "[p]rinciples requiring generous construction of *pro se* complaints are not, however, without limits. *Gordon* directs district courts to construe pro se complaints liberally. It does not require those courts to conjure up questions never squarely presented to them." *Beaudett*

*v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (referencing *Gordon v. Leeke*, 574 F.2d 1147, *cert. denied*, 439 U.S. 970 (1978)).

A claim for civil business conspiracy under Va. Code §§ 18-2.499 and 18.2-500 requires a plaintiff to establish, "by clear and convincing evidence . . . that the conspirators acted with legal malice, i.e., 'intentionally, purposely, and without lawful justification.'" *Dunlap v. Cottman Transmission Systems, LLC*, 287 Va. 207, 215, 754 S.E.2d 313, 317 (2014). These unlawful acts must cause, as planned, business damages to plaintiff. *Gallop v Sharp*, 179 Va. 335, 338, 19 S.E.2d 84, 86 (1942) ("No cause of action exists without the resulting injury, and the damage produced must arise as the effective result of the conspiracy."). The business damages must be actual, not speculative or nominal. *Advanced Marine Enters., Inc. v. PRC Inc.*, 256 Va. 106 (1998); *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable*, 108 F.3d 522, 527–28 (4th Cir. 1997). Moreover, "[T]he gist of the civil action of conspiracy is the damage caused by the acts committed in pursuance of the formed conspiracy and not the mere combination of two or more persons to accomplish an unlawful purpose or use unlawful means." *Dunlap*, 287 Va. at 214, 754 S.E.2d at 313 (quoting *Gallo*, 179 Va. at 338, 19 S.E.2d at 86).

As to Defendant Haddock, the Amended Complaint identifies his purported knowledge and actions during and after his employment as Live Well's CFO from December 2018 to June 2019. Am. Compl., ECF 46 ¶¶ 49-60. It alleges that while employed as CFO, Defendant prepared and provided bond valuation data in spreadsheets that were re-dated with unchanged values to third-party pricing services and market participants. *Id*. ¶¶ 49, 55. Haddock allegedly "created, controlled, or directed the monthly pricing spreadsheet process and caused static bond marks to be submitted to IDC for multiple months prior to IDC's cessation of pricing," (*id.* ¶ 58), "knew that

IDC's cessation of pricing would result in Bloomberg pricing automatically appearing on U.S. Bank's third-party pricing reports," (*id.* ¶ 51), knew that this would result in "immediate valuation write-down, margin failure, covenant breaches, and collapse," (*id.* ¶ 52), knew in advance "the date on which IDC would cease pricing," (*id.* ¶ 53), and, immediately before that happened, "refused to sign Live Well's financial statements," (*id.* ¶ 54), all with "contemporaneous knowledge of the impending collapse." ¶ 54. Finally, Plaintiff alleges that Defendant admitted in sworn testimony that Defendant "acknowledged that, after communications concerning IDC's pricing role, [Defendant] *learned that* the bond marks 'had not changed' and that the spreadsheet transmitted to IDC 'appeared to be just being re-dated and sent month over month.'" *Id*. ¶ 56 (emphasis added).

Plaintiff's theory of Defendant Haddock's liability for business conspiracy is inconsistent with Virginia law. Plaintiff initiated and participated in a fraud scheme that did not involve Defendant Haddock for several years before Haddock became CFO. That fraud scheme, when it became known, was the cause of Live Well's collapse. Nevertheless, according to Plaintiff, it was Defendant Haddock's refusal to participate in the fraud, while aware of its existence, that caused Live Well's collapse, because the revelation of the fraudulent mis-marking of Live Well's bond holdings "precipitated margin failures, covenant breaches, and the cascading defaults" of Live Well. *Id.* ¶ 59. To the contrary, those consequences arose from Plaintiff's own criminal activity, not the refusal of Defendant Haddock to join the criminal conspiracy led by Plaintiff. Plaintiff's main issue with Defendant Haddock appears to be that he truthfully exposed the scheme perpetuated by Plaintiff to the federal authorities who investigated and prosecuted Plaintiff and others.

Moreover, Plaintiff's actions in filing a claim against Haddock after he lawfully refused to sign Live Well's financial statements and honestly reported his reasons for doing so to the government is akin to whistleblower retaliation for testifying or assisting in an investigation or judicial action. *See* 15 USC §78u-6(h)(1)(A); *Ellington v. Giacoumakis*, 977 F. Supp. 2d 42, 45 (D. Mass. 2013) (finding a plausible claim for whistleblower retaliation where whistleblower disclosed wrongdoing after termination).

Although the Court must accept the facts alleged in the Complaint as true, along with reasonable inferences drawn therefrom, a pleading must still offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff's Complaint fails this test because it does not properly allege the required elements for any of the claims as to Defendant Haddock.

With respect to the statutory business conspiracy and common law civil conspiracy claims, the Complaint does not allege a conspiracy involving Defendant because it fails to identify with whom Defendant conspired. *See Fox v. Deese*, 234 Va. 412, 428, 362 S.E.2d 699, 708 (1987). Plaintiff states vaguely that "communications" with Defendant Christopher Krupa gave Haddock "advanced knowledge of the date on which IDC would cease pricing[,]" without alleging agreement, intent, or knowledge of a common scheme stemming from such communication. Am Compl, ECF 46 ¶ 53. The conspiracy claims contain only the conclusory allegations that "Defendants combined and agreed to willfully and maliciously injure Plaintiff in his trade, business, and profession," (*id.* ¶ 70), "employed improper methods," (*id.* ¶ 71), "committed overt acts in furtherance of the conspiracy," (*id.* ¶ 72), and "Defendants agreed to accomplish unlawful

purposes and used unlawful means." (*Id*. ¶ 74). As for tortious interference with contract and with business expectacy, Plaintiff's allegations are merely that Defendant knowingly "interfered" with Plaintiff's contracts and business expectancies, with no elaboration. *Id*. ¶¶ 78, 81. These conclusory, threadbare allegations, coupled with the Complaint's failure to allege facts showing that Defendant Haddock conspired with anyone, dooms Plaintiff's claims.

In addition, the Complaint does not allege facts sufficient to infer that Defendant had any intention to destroy Live Well's operations or value without lawful justification. *Commercial Bus. Sys., Inc. v. BellSouth Servs., Inc.*, 249 Va. 39, 47, 453 S.E. 2d 261, 267 (1995) (citing *Greenspan v. Osheroff*, 232 Va. 388, 398-99, 351 S.E. 2d 28, 35-36 (1986)) (where a conspirator has both legitimate and illegitimate motives, the "primary and overriding purpose" must be an illegitimate purpose to injure the plaintiff's business). Defendant Haddock's purpose in taking the actions he did while employed at Live Well and in his conversations and testimony in subsequent criminal investigations and proceedings was, quite obviously, to obey the law, refuse to join in Plaintiff's conspiracy, and provide truthful answers about Plaintiff's criminal conduct.

Finally, the Complaint does not allege any specific actions, statements, or non-statements of Defendant that *caused* the financial downfall and collapse of Live Well. Based on the public record, Plaintiff's actions from 2015 to December 2018 caused Live Well to collapse and be placed into bankruptcy. For these reasons, Defendant submits that the Amended Complaint fails to allege at all or sufficiently that Defendant engaged in any conduct that caused Plaintiff's damages—these were the self-inflicted consequences of Plaintiff's criminal activity.

## VII. CONCLUSION

For the foregoing reasons, Defendant Haddock respectfully requests that the Court grant his motion to dismiss the claims and the First Amended Complaint against him in its entirety and with prejudice.

Date: February 23, 2026

Respectfully submitted,

/s/ *Adriaen M. Morse Jr.*
Adriaen M. Morse Jr. (VSB No. 38889)
Cory C. Kirchert (VSB No. 36163)
SECIL Law PLLC
1701 Pennsylvania Ave., NW
Suite 200
Washington, DC 20006
amorse@secillaw.com
Tel: (571) 314-5469
ckirchert@secillaw.com
Tel: (703) 405-7974

*Counsel for Defendant Glen Haddock*

## CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2026, a true and accurate copy of the foregoing document was filed through the Court's CM/ECF electronic filing system, which will forward a copy of the same to Plaintiff and counsel of record registered to receive electronic service by operation of the Court's electronic filing system.

Michael C. Hild, pro se
2302 E. Marshall Street
Richmond, Virginia 23223
Tel:(804) 306-4314
michaelchristopherhild@gmail.com

/s/ *Adriaen M. Morse Jr.*
Adriaen M. Morse Jr.