UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

MICHAEL C. HILD,                                          Case No. 3:25-cv-1050 (DJN)
                                                            Honorable David J. Novak
                    Plaintiff,

v.

DAN FOSTER, in his individual capacity;
GLEN HADDOCK, in his individual capacity;
LAWRENCE "LARRY" MATTERA, JR.,
in his individual capacity; CHRISTOPHER
KRUPA, in his individual capacity;
BLOOMBERG L.P; INTERCONTINENTAL
EXCHANGE, INC.; INDUSTRIAL AND
COMMERCIAL BANK OF CHINA
LIMITED; MIRAE ASSET SECURITIES
(USA) INC.; FLAGSTAR BANK, FSB;
CUSTOMERS BANK; and DOES 1-50,
inclusive,

                    Defendants.

---

**BRIEF IN SUPPORT OF DEFENDANT FLAGSTAR BANK, N.A.'S
MOTION TO DISMISS FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

QUESTIONS PRESENTED ................................................................................................ v

CONTROLLING OR MOST APPROPRIATE AUTHORITY ..................................................... vi

INTRODUCTION ........................................................................................................... 1

STATEMENT OF FACTS ................................................................................................. 2

    A.    Hild's criminal proceedings and Live Well's bankruptcy ............................................. 2

    B.    Hild's first amended complaint ................................................................................. 3

STANDARD OF REVIEW ................................................................................................ 5

ARGUMENT ................................................................................................................ 6

    I.    Hild lacks standing to pursue a claim against Flagstar ................................................. 6

        a. The substance of Hild's complaint is a claim that belongs to Live Well .................. 6

        b. Hild lacks standing to pursue a claim in his capacity as a shareholder of Live Well 8

        c. Hild's alleged guarantee-fee agreements with Live Well do not establish standing . 9

    II.    Hild's claims against Flagstar are barred by the statute of limitations ........................... 9

    III.    Hild fails to state a claim upon which relief can be granted ....................................... 11

        a. Unjust enrichment ............................................................................................. 11

        b. Tortious interference .......................................................................................... 12

        c. Conspiracy ....................................................................................................... 14

CONCLUSION ............................................................................................................. 17

# TABLE OF AUTHORITIES

**Cases**

*ACA Fin. Guar. Corp. v. City of Buena Vista*,
    917 F.3d 206 (4th Cir. 2019) ............................................................. 5

*Almy v. Grisham*,
    273 Va. 68; 639 S.E.2d 182 (2007) ................................................. 14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).............................................................. *passim*

*Beaudett v. City of Hampton*,
    775 F.2d 1274 (4th Cir. 1985) ....................................................... 11

*Bell Atlantic Corporation v. Twombly*,
    550 U.S. 544 (2007)......................................................... 1, 5, 14, 15

*Caldwell v. U.S. Dep't of Educ.*,
    816 F. App'x 841 (4th Cir. 2020) ................................................. 6, 8

*Citizens for Fauquier County v. SPR Corp*,
    37 Cir. 44, 50 (1995)................................................................. 14, 16

*Commerce Funding Corp. v. Worldwide Sec. Servs. Corp.*,
    249 F.3d 204 (4th Cir. 2001) ......................................................... 12

*Detrick v. Panalpina, Inc.*,
    108 F.3d 529 (4th Cir. 1997) ......................................................... 10

*Dunlap v. Cottman Transmissions Sys., LLC*,
    576 F. App'x 225 (4th Cir. 2014) .................................................... 9

*E.E.O.C. v. Waffle House, Inc.*,
    534 U.S. 279 (2002)......................................................................... 7

*East West, LLC v. Rahman*,
    873 F. Supp. 2d 721 (E.D. Va. 2012) ............................................ 12

*Exec. Risk Indem., Inc. v. Charleston Area Med. Ctr., Inc.*,
    681 F. Supp. 2d 694 (S.D. W. Va. 2009)......................................... 7

*Firestone v. Wiley*,
    485 F. Supp. 2d 694 (E.D. Va. 2007) ............................................ 14

*Forest Lakes Cmty. Ass'n, Inc. v. United Land Corp. of Am.*,
    293 Va. 113 (2017) ........................................................................................ 9

*Francis Hosp., Inc. v. Read Props., LLC*,
    296 Va. 358 (2018) ...................................................................................... 13

*Hairston v. DVA*,
    841 F. App'x 565 (4th Cir. 2021) ................................................................. 8

*L-3 Communs. Corp. v. Serco, Inc.*,
    926 F.3d 85 (4th Cir. 2019) ........................................................................ 10

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)...................................................................................... 6

*Martineau v. Wier*,
    934 F.3d 385 (4th Cir. 2019) ....................................................................... 7

*Mission Integrated Techs., LLC v. Clemente*,
    158 F.4th 554 (4th Cir. 2025) .................................................. 9, 10, 11, 16

*Mullins v. First Nat. Exch. Bank of Va.*,
    275 F. Supp. 712 (W.D. Va. 1967) .............................................................. 8

*RMS Tech., Inc. v. TDY Indus.*,
    64 F. App'x 853 (4th Cir. 2003) .................................................................. 9

*Safe Haven Wildlife Removal & Prop. Mgmt. Experts, LLC v. Meridian Wildlife
    Servs. LLC*,
    716 F. Supp. 3d 432 (W.D. Va. 2024) ..................................................... 9, 10

*Schaecher v. Bouffault*,
    290 Va. 83; 772 S.E.2d 589 (2015) ............................................................ 12

*SD3 LLC v. Black & Decker (U.S.) Inc.*,
    801 F.3d 412 (4th Cir. 2015) ................................................................ 13, 16

*Smith Setzer v. S.C. Procurement Panel*,
    20 F.3d 1311 (4th Cir. 1994) ....................................................................... 8

*Smithfield Ham & Prods. Co. v. Portion Pac. Inc.*,
    905 F. Supp. 346 (E.D. Va. 1995) ............................................................. 12

*Sopkin v. Mendelson*,
    746 F. App'x 157 (4th Cir. 2018) ................................................................ 2

*Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.*,
299 F. Supp. 2d 565 (E.D. Va. 2004) ................................................................. 9

*Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co., Ltd.*,
682 F.3d 292 (4th Cir. 2012) ............................................................................ 14

*Veney v. Wyche*,
293 F.3d 726 (4th Cir. 2002) .............................................................................. 2

*Ward v. Ernst & Young*,
246 Va. 317; 435 S.E.2d 628 (1993) ................................................................... 6

*Weller v. Dep't of Soc. Servs.*,
901 F.2d 387 (4th Cir. 1990) ............................................................................ 11

*Witthohn v. Fed. Ins. Co.*,
164 F. App'x 395 (4th Cir. 2006) ........................................................................ 2

*Womble v. Dixon*,
752 F.2d 80 (4th Cir. 1984) ................................................................................ 8

**State Statutes**

Va. Code 8.01.229 ............................................................................................. 11

Va. Code 8.01.230 ............................................................................................... 9

Va. Code 8.01.243 ............................................................................................. 10

Va. Code 18.2.499 ................................................................................... 5, 15, 16

Va. Code 18.2.500 ............................................................................................... 5

**Federal Rules**

Fed. R. Civ. P. 12 ................................................................................................ 5

## QUESTIONS PRESENTED

### I.

**Hild's complaint seeks redress for injury against Live Well, the now-bankrupt company that Hild once served as CEO of. Does Hild lack standing to bring a claim on behalf of Live Well?**

Defendant Flagstar Bank, N.A answers, "yes."

Plaintiff Michael C. Hild answers, "no."

### II.

**To the extent that Hild can establish standing, are his claims barred under the statute of limitations?**

Defendant Flagstar Bank, N.A answers, "yes."

Plaintiff Michael C. Hild answers, "no."

### III.

**Does Hild's first amended complaint fail to allege sufficient factual content from which the Court can infer that Flagstar is subject to liability, as required under *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007) and its companion case, *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)?**

Defendant Flagstar Bank, N.A answers, "yes."

Plaintiff Michael C. Hild answers, "no."

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

- Fed. R. Civ. P. 12(b).

- Va. Code Ann. § 18.2-499.

- *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

- *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

## INTRODUCTION

Plaintiff Michael C. Hild is the former CEO of Live Well Financial, Inc., a private company that originated, serviced, and securitized government-guaranteed reverse mortgages. Almost five years ago, Hild was criminally convicted on several counts of fraud for his role in orchestrating a multi-million-dollar financial fraud scheme which caused Live Well's ultimate demise. Seemingly still in denial of his culpability, Hild filed this lawsuit against ex-Live Well executives, "market data vendors,"[1] and Live Well's lenders, including defendant Flagstar Bank, N.A. Hild accuses his former executives of supplying manipulated pricing for Live Well securities and blames third-party pricing servicers and lenders for relying on that pricing to issue margin calls, declare defaults, and accelerate loan obligations.

Although the complaint lacks even the most basic clarity, one thing is readily apparent: Hild doesn't assert any claim against Flagstar. Hild makes a number of generalized and non-sensical allegations of business torts, none of which are specifically directed at Flagstar. At best, the most Hild alleges against Flagstar is that it relied on the submissions and pricings prepared by the other defendants. There is nothing alleged which even remotely suggests wrongdoing by Flagstar. Because the complaint doesn't contain sufficient factual content from which the Court can draw a plausible inference that Flagstar is liable for unjust enrichment, tortious interference, or conspiracy, it doesn't satisfy the plausibility standard outlined in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007) and its companion case, *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Regardless of whether the complaint meets the plausibility standard, Flagstar is entitled to dismissal for several other independent grounds. First, Hild has no standing. The substance of his claims against Flagstar are rooted in contract (Live Well's loan agreement with Flagstar), not tort.

---

[1] The phrase "market data vendors," although seemingly key to Hild, has no clear meaning.

Hild hasn't established standing to bring a breach of contract claim against Flagstar, nor can he prove such authority since any claim belongs to Live Well's bankruptcy trustee. Even considering the tort claims as plead, Hild cannot, as a shareholder, recover on Live Well's behalf for loss of value to the company. To the extent he can prove standing, Hild's claims accrued more than five years ago and are barred under the statute of limitations. For various reasons, therefore, Flagstar is entitled to dismissal.

## STATEMENT OF FACTS

### A. Hild's criminal proceedings and Live Well's bankruptcy.

The underlying facts of this lawsuit concern Live Well's multi-year, multi-million dollar scheme of defrauding lenders by fraudulently inflating the value of bonds serving as collateral and borrowing base for various loans to Live Well. These facts have been conclusively established through Hild's criminal matter. Hild, the former CEO of Live Well, was the mastermind and chief beneficiary of that scheme. Flagstar is one of Live Well's former lenders.

In August 2019, Hild was indicted in the Southern District of New York for his role in devising, spearheading, and managing this defrauding scheme. *United States of America v Michael Hild* (S.D.N.Y. Case No. 1:19-cr-00602-RA). Following a two-and-a-half week trial in April 2021, Hild was convicted of securities fraud, wire fraud, bank fraud, and conspiracy. *Id*. The Court of Appeals for the Second Circuit affirmed the judgment of the District Court in July 2025 and denied Hild's various motions for rehearing on February 2, 2026. **Exhibit A**, July 30, 2025 Second Circuit Court of Appeals Opinion (Case No. 23-6136); **Exhibit B**, October 15, 2025 Second Circuit Court of Appeals Amended Summary Order (Case No. 23-6136); **Exhibit C**, February 3, 2026 Second Circuit Court of Appeals Order Denying Hild's Motions for Rehearing.[2] The District Court has

---

[2] This Court may consider and take judicial notice of Hild's official public court records in evaluating a motion under Rule 12(b)(6). *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 397 (4th

ordered Hild to pay restitution in the amount of $45,715,100.72 to a variety of victims, including Flagstar. **Exhibit D**, September 23, 2024 Opinion and Order (*United States of America v Michael Hild*, S.D.N.Y. Case No. 1:19-cr-00602-RA).

As for Live Well, the company defaulted on its various loans and funding agreements and was placed into involuntary Chapter 7 bankruptcy in June 2019 in the United States District Court for the District of Delaware. *In re Live Well Financial, Inc.* (Bankr. D. Del. Case No. 19-11317(LSS)). The United States Trustee appointed David Carickhoff as Live Well's Chapter 7 trustee.

**B. Hild's first amended complaint**.

Hild filed this lawsuit against former Live Well executives, "market data vendors," and Live Well's lenders generally alleging that "Defendants" intentionally manipulated bond pricing data leading to margin calls and loan accelerations. Throughout the complaint, Hild engages in shotgun pleading rather than differentiating between defendants. However, the one thing that is clear is that Flagstar did not manipulate data of any kind.

To the extent it can be understood, the first amended complaint mostly concerns pricing methodologies that defendants Dan Foster and Glen Haddock (former Live Well employees that reported directly to and acted under Hild's authority as proved in Hild's criminal conviction) allegedly set in place and submitted to third-party pricing services in their respective roles at Live Well. First Amended Complaint ("FAC"), Doc. 46 at ¶¶ 35-45, 49-60. Hild complains that the lender defendants relied on this distorted pricing and thus issued margin calls and declared

---

Cir. 2006). Moreover, this Court need not accept any allegations in Hild's complaint that are contradicted by the public record. *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (At the motion to dismiss stage, we need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." (internal quotation marks omitted)); *Sopkin v. Mendelson*, 746 F. App'x 157, 158 (4th Cir. 2018) (same)

defaults. *Id.* at ¶¶ 46-48. Despite the huge financial gain he received from Live Well's pricing scheme ($26 million), Hild tries to recharacterize himself as a victim of his own fraud.

In an attempt to establish personal injury because of the defendants' allege scheme, Hild presents a story of personal guarantees and "guarantee-fee agreements" that he entered into with Live Well. *Id.* at ¶¶ 21-29. First, Hild says that he personally guaranteed Live Well's key credit facilities, including the Flagstar warehouse line. *Id.* at ¶ 21-22. He claims that these credit facilities were "subject to cross-default provisions, such that a default under any facility automatically triggered defaults under all facilities." *Id.* at ¶ 23. He claims to have been damaged because any default declared by any lender "automatically exposed [him] to personal liability under facilities he had guaranteed." *Id.* at ¶ 24.

Hild next says that he and Live Well entered into guarantee-fee agreements related to his personal guarantees, which provided a "substantial portion of [his] livelihood." *Id.* at ¶ 27. He describes these agreements as "contractual income streams," but does not say how his income stream was structured, when these agreements were entered into, what consideration he provided to Live Well, or how much he received under the agreements. *See Id.* at ¶ 29. He claims to have been damaged because the defaults and Live Well's bankruptcy terminated his guarantee-fee income. *Id.* at ¶ 28-29.

In total, Hild alleges damages exceeding $900,000,000 based on: termination of his guarantee-fee income, "other compensation tied to his personal performance and guarantees; the triggering and enforcement of cross-defaulted personal guarantees and related personal liability exposure;" "reputational and professional harm and resulting loss of future earning capacity;" "restitution-related enforcement harms;" and "loss in the value of his personally held equity and

contractual economic interests associated with Live Well and its anticipated growth trajectory." *Id.* at ¶ 61.

From these facts, Hild alleges "Virginia Business Conspiracy" under Va. Code §§ 18.2-499 and 18.2-500, common law civil conspiracy, tortious interference with contract, tortious interference with business expectancy, and unjust enrichment. *Id.* at pgs. 11-13. In asserting these theories, Hild does not distinguish Flagstar from any other defendant and cites nothing even remotely related to wrongdoing by Flagstar or any other lender. At best, Hild claims that his employees manipulated bond pricing[3] and that Flagstar relied on that pricing.

## STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of the complaint. *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 212 (4th Cir. 2019). The determination of whether dismissal is appropriate rests primarily on the allegations in the complaint. *Id.* As a general rule, the Court must assume the veracity of the allegations in the complaint. *Iqbal*, 556 U.S. at 678-79. But application of the general rule is limited to allegations comprised of well-pleaded facts. *Id.* at 679. Allegations comprised of labels and conclusions, formulaic recitals of elements, unadorned accusations, or naked assertions aren't entitled to a presumption of truth. *Id.* at 678; *Twombly*, 550 U.S. at 555.

Dismissal is proper if the complaint fails to establish entitlement to relief. *City of Buena Vista*, 917 F.3d at 212. To establish entitlement to relief and survive dismissal, the complaint must cross the line of possibility and enter the realm of plausibility. *Iqbal*, 556 U.S. at 678-69. The plausibility standard requires "more than a sheer possibility" of misconduct. *Id.* at 678. If the well-pleaded facts don't permit the Court to infer more than a sheer possibility of misconduct, the

---

[3] This was indeed a theme in Hild's criminal trial; that everyone, except him, was responsible for bond pricing and the fraud that the lenders are victims of.

complaint alleges—but fails to show—entitlement to relief. *Id.* at 679. Thus, factual allegations that are merely consistent with liability fall short of "the line between possibility and plausibility of entitlement to relief." *Id.* at 678. The plaintiff "is not entitled to discovery, cabined or otherwise," if the complaint fails to meet the plausibility standard. *Id.* at 686.

## ARGUMENT

**I.    Hild lacks standing to pursue a claim against Flagstar.**

**a.    The substance of Hild's complaint is a claim that belongs to Live Well.**

Flagstar is entitled to dismissal because any claim that Hild attempts to assert actually belongs to Live Well. Article III of the Constitution of the United States requires that a plaintiff have legal standing in order for a court to properly hear his case. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The plaintiff bears the burden of establishing standing. *Id*. at 561. While it is true that, at the pleading stage, general factual allegations will suffice, a plaintiff must still plead facts sufficient to establish that he has standing to bring his claims. *Id*.

Hild complains that Live Well's lenders, including Flagstar, wrongfully declared defaults, margin calls, and accelerated Live Well's loan obligations. Although he asserts various business torts, his grievances are actually rooted in contract—that is, Live Well's respective loan agreements. *See Caldwell v. U.S. Dep't of Educ.*, 816 F. App'x 841, 842 (4th Cir. 2020) ("[I]t is the substance of [pro se] pleadings, rather than their labels, that is determinative."). Those agreements set the terms of repayment, default, margin calls, etc. In order to have standing to assert a breach, Hild must establish that he entered into a valid contract with Flagstar or was a privy or third-party beneficiary of such a contract. He hasn't. *Ward v. Ernst & Young*, 246 Va. 317, 435 S.E.2d 628, 634 (1993) ("[t]hose with standing to sue for breach of contract include the person to whom the promise was made, his privy, or any one for whose benefit the contract was made.") (internal quotation marks and citations omitted).

6

Hild alleges a personal contractual relationship with Flagstar through an alleged guarantee agreement. But he doesn't allege breach of that contract, or damages flowing from a breach. Instead, he continues to assert damages which belong to Live Well. Hild cannot and does not allege a relationship with Flagstar related to those specific agreements; that he has a right to sue as a third-party beneficiary of the loan agreements; or that he has a right to sue as a privy. So he does not allege any authority to bring a claim on behalf of Live Well. As plead, the contract claims belong to Live Well, the contracting party, not Hild. *See Exec. Risk Indem., Inc. v. Charleston Area Med. Ctr., Inc.*, 681 F. Supp. 2d 694, 730 (S.D. W. Va. 2009) (to assert a breach of contract claim, there must be a valid, enforceable contract between the parties); *see also E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("It goes without saying that a contract cannot bind a nonparty.").

Hild also lacks prudential standing[4] because Live Well was placed into involuntary Chapter 7 bankruptcy and any claim actually belongs to the bankruptcy trustee: "in the context of a Chapter 7 bankruptcy, it is the bankruptcy trustee and not the debtor who is the real party in interest with respect to property of the estate, with the right to bring any legal claims that belong to the estate." *Martineau v. Wier*, 934 F.3d 385, 391 (4th Cir. 2019) (citations omitted). For various reasons, therefore, Hild lacks the capacity to recover for Live Well's alleged contractual damages and his complaint should be dismissed on this basis alone.

---

[4] Federal courts recognize a distinction between constitutional standing under Article III and prudential standing, which does not implicate a federal court's subject matter jurisdiction. Prudential standing concerns issues such as identity of the real party in interest. *Martineau*, 934 F.3d at 391 (citations omitted).

**b. Hild lacks standing to pursue a claim in his capacity as a shareholder of Live Well**.

Even considering the business torts plead in the complaint, Hild, in substance, seeks recovery on Live Well's behalf for loss of value of the company. It is "well settled" that "Virginia law does not accord a shareholder standing to sue in his own right for compensatory damages caused by injury to a corporation." *Womble v. Dixon*, 752 F.2d 80, 82 (4th Cir. 1984) (citation omitted); *see also Smith Setzer v. S.C. Procurement Panel*, 20 F.3d 1311, 1317 (4th Cir. 1994). The rule is that a "shareholder of a corporation, even if he is the sole shareholder, has no personal or individual right of action against third parties for a wrong or injury inflicted by those third parties upon the corporation." *Mullins v. First Nat. Exch. Bank of Va.*, 275 F. Supp. 712, 721 (W.D. Va. 1967). The shareholder's remedy is to institute a derivative suit for the benefit of the corporation. *Womble*, 752 F.2d at 82. But Hild cannot sue on benefit of the bankrupt estate.

In a transparent effort to avoid dismissal, Hild has added unrelated facts and claims of damage to avoid the inherent problem with his complaint. Despite his repeated statements that he is asserting non-derivative claims or that he is only alleging loss to the extent it constitutes personal injury, it is the substance of his pleadings rather than his mere assertions and labels that is determinative. *Caldwell*, 816 F. App'x at 842; *see also Hairston v. DVA*, 841 F. App'x 565, 566 (4th Cir. 2021). The heart of Hild's claims is that he was a shareholder of Live Well and that as a result of the diminution in value of the company, he was personally damaged. *See, e.g.* FAC, Doc. 46 at ¶¶ 3, 61, 64 ("Plaintiff further suffered substantial loss in the value of his personally held equity … associated with Live Well and its anticipated growth trajectory"). Hild's alleged injury only exists by virtue of the fact that he was a shareholder. Meaning, his claim is not personal at all. Any wrongs against Live Well allegedly injured all shareholders by causing a diminution in share value. Because Hild cannot state an interest different from his loss of value as a shareholder, he lacks standing to pursue any tort claims against Flagstar.

**c.  Hild's alleged guarantee-fee agreements with Live Well do not establish standing**.

To sidestep the fundamental issue of standing, Hild asserts that he was damaged personally because he had guarantee-fee agreements with Live Well that were terminated or damaged as a result of the defendants' actions. Nothing about these alleged agreements changes the fact that Hild's damages, substantively, are for diminution in the value of Live Well. Hild does not allege how he was to receive payments under these agreements or how exactly Flagstar's defaults and loan foreclosures affected his rights therein. All in all, Hild does not allege any damages as a result of either the guarantees or guarantee-fee agreements.

**II.    Hild's claims against Flagstar are barred by the statute of limitations**.

To the extent that Hild has standing, his claims are still subject to dismissal because they are time-barred. The statute of limitations for unjust enrichment in Virginia is three years. *RMS Tech., Inc. v. TDY Indus.*, 64 F. App'x 853, 857 (4th Cir. 2003). The claim accrues at the time the unjust enrichment occurred: "when the defendant does not pay the expected compensation for a benefit he has obtained." *Mission Integrated Techs., LLC v. Clemente*, 158 F.4th 554, 567 (4th Cir. 2025) (citation omitted). The time that a party knew or should have known of the unjust enrichment is irrelevant. *Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.*, 299 F. Supp.2d 565, 576 (E.D. Va. 2004).

Claims of tortious interference with a contract and tortious interference with business expectancy are subject to a five-year statute of limitations. *Dunlap v. Cottman Transmissions Sys., LLC*, 576 F. App'x 225, 226 (4th Cir. 2014). A tortious interference claim accrues on the date that the injury, however slight it may be, occurs. *See* Va. Code § 8.01-230; *Safe Haven Wildlife Removal & Prop. Mgmt. Experts, LLC v. Meridian Wildlife Servs. LLC*, 716 F. Supp. 3d 432, 443 (W.D. Va. 2024) (citing *Forest Lakes Cmty. Ass'n, Inc. v. United Land Corp. of Am.*, 293 Va. 113 (2017)).

The statute of limitations for conspiracy in Virginia is five years. *Safe Haven Wildlife*, 716 F. Supp. 3d at 444 (citing Va. Code § 8.01-243 and *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 543 (4th Cir. 1997)); *see also Mission Integrated*, 158 F.4th at 565. The claim "does not accrue until the plaintiff suffers an injury sufficient to give rise to the underlying tort claim." *Id.* (quoting *L-3 Communs. Corp. v. Serco, Inc.*, 926 F.3d 85, 93 (4th Cir. 2019)). And to prove such an injury, a plaintiff necessarily is required to prove every element of the underlying tort. *Id.*

Although Hild does not plead any timeline whatsoever regarding defendants' pricing, margin calls, or loan acceleration, under Hild's version of the facts, any alleged wrongful conduct must have occurred before Live Well's bankruptcy in June 2019. As related to Flagstar, any reliance on distorted pricing, and certainly any margin calls or defaults, had to have occurred while Live Well was still operating. For purposes of accrual, any injury that Hild claims to have sustained from Flagstar's reliance and subsequent foreclosure actions occurred then. Moreover, at the latest, Hild's claims accrued at the time of the bankruptcy given that Chapter 7 has the effect of rendering the company worthless and dropping shareholder value to zero as the company liquidates all assets to pay creditors. Thus, any injury following Flagstar's alleged tortious interference, conspiracy, or unjust enrichment occurred, at the latest, over six years before Hild filed this action. The respective statutes of limitations (three and five years), bar his claims.

Hild attempts to overcome these limitations periods by alleging that he had no information on defendants' wrongdoing until April 2021. FAC, Doc. 46 at ¶¶ 30-31. Specifically, he claims that in April 2021 (likely, at the time of his criminal trial), he "received a single, fragmentary prosecutorial note suggesting that Dan Foster had supplied pricing inputs to a market-data publisher." *Id.* at ¶ 31. This claim is contradicted by the fact that all relevant facts and any damage allegedly incurred occurred at least by the time of Live Well's bankruptcy. Hild hasn't alleged any

authority to support a theory that the statute of limitations should have been tolled; and the only authority he previously cited to, Va. Code § 8.01-229(D), has been omitted from his amended complaint since that statute is inapplicable. For various reasons, Hild's claims have long expired.

### III.  Hild fails to state a claim upon which relief can be granted.

Assuming Hild has standing and the statute of limitations does not bar his complaint, the complaint should alternatively be dismissed because Hild hasn't stated a claim upon which relief can be granted. While pro se complaints may "represent the work of an untutored hand requiring special judicial solicitude," a district court is not required to recognize "obscure or extravagant claims defying the most concerted efforts to unravel them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985). "The 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate." *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

#### a.  Unjust enrichment.

Count VI of the first amended complaint alleges unjust enrichment. Unjust enrichment under Virginia law occurs when "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant knew of the benefit and should reasonably have expected to repay the plaintiff; and (3) the defendant accepted or retained the benefit without paying for its value." *Mission Integrated*, 158 F.4th at 567 (citation and quotation marks omitted).

It is unclear exactly what benefit Hild believes he personally conferred upon Flagstar. Hild seems to say that the lender defendants received a benefit from the substituted pricing and defaults through "financial recoveries, enforcement leverage, loss shifting, and avoidance of market and credit risk." FAC, Doc. 46 at ¶ 86. As an initial matter, any such alleged benefit could have only

been conferred by Live Well, not Hild.[5] Nonetheless, this "benefit" is contradicted by the fact that Flagstar was a victim of Hild's fraud, not the other way around. Indeed, Flagstar has a valid, outstanding restitution judgment against Hild in the amount of $13,364,357.00, which the United States District Court for the Southern District of New York ruled was a reasonable approximation of Flagstar's losses supported by sound methodology. Ex. D at pgs. 23-24. In other words, Flagstar "gained" the right to lose millions by Hild's bond. Because there was no benefit that Flagstar conferred upon Hild, much less a benefit that it unjustly retained, Hild cannot state an unjust enrichment claim.

### b. Tortious interference.

Counts III and IV of the first amended complaint allege, respectively, tortious interference with contract and tortious interference with business expectancy. These claims essentially require the same elements under Virginia law.

To state a tortious interference claim, the plaintiff must allege: (1) a valid contractual relationship or business expectancy with a probability of future economic benefit to the plaintiff; (2) knowledge of the relationship or expectancy on the part of the defendant; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resulting damage to the relationship. *Commerce Funding Corp. v. Worldwide Sec. Servs. Corp.*, 249 F.3d 204, 210 (4th Cir. 2001) (citation omitted); *Schaecher v. Bouffault*, 290 Va. 83, 772 S.E.2d 589, 602 (Va. 2015); *Smithfield Ham & Prods. Co. v. Portion Pac. Inc.*, 905 F. Supp. 346, 349 (E.D. Va. 1995). A plaintiff must also allege the added element that the defendant employed "improper methods in causing the alleged interference." *East West, LLC v. Rahman*, 873 F. Supp. 2d 721, 735 (E.D. Va. 2012).

---

[5] Hild's assertion in this regard is illustrative of his attempts of conflating his claims and damages with Live Well's.

Hild's tortious interference with contract claim alleges that defendants, as a whole, interfered with Hild's "contractual relationships, including guarantee-fee agreements." FAC, Doc. 46 at ¶ 76. Setting aside the vagueness of his reference to "contractual relationships," Hild has alleged no facts suggesting that Flagstar had knowledge of his guarantee-fee agreements with Live Well. The singular allegation related to this issue is that the lender defendants received copies of Hild's personal and audited financial statements, which Hild claims "disclosed [his] receipt of substantial personal guarantee-fee income." *Id*. at ¶ 29. Assuming the truth of this allegation, it is not plausible that, by merely receiving Hild's financial statements, Flagstar had knowledge of the contracts that underlie his income streams; let alone the terms of those contracts and Hild's expectations under them. The only contract Hild references Flagstar is a party to. It is black letter law that a party cannot tortiously interfere its own contract. *Francis Hosp., Inc. v. Read Props., LLC*, 296 Va. 358, 364 (2018).

Hild also has not plausibly alleged that Flagstar intentionally interfered with any contract through improper or illegal means. All Hild says here is that "Defendants intentionally interfered through improper methods." FAC, Doc. 46 at ¶ 78. While knowledge and intent may be alleged generally, these elements still must be accompanied by allegations of fact giving rise to a reasonable inference of knowledge or intent. *Iqbal* 556 U.S. at 686. Hild can't meet this burden. *See SD3 LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412,422 (4th Cir. 2015) (emphasizing that courts are not required to "accept unwarranted inferences, unreasonable conclusions, or arguments" when ruling on a motion to dismiss and "can further put aside any naked assertions devoid of further factual enhancement") (internal quotation marks omitted). In short, Hild has not alleged any contract that Flagstar interfered with, let alone improperly. To the extent he believes

13

that interference occurred through default of the loan that Flagstar issued to Live Well – there can be no claim for interfere with a contract that Flagstar is itself a party to.

Hild's tortious interference with business expectancy claim is even more barebones, asserting only that he "had reasonable business expectancies" which defendants knew of and interfered with. FAC, Doc. 46 at ¶¶ 80-81. Hild does not identify any particular expectancy that existed and was reasonably certain; that Flagstar had knowledge of such expectancy; any acts by Flagstar constituting intentional interference with this expectancy; or any damages that resulted from that interference. Hild's formulaic recitation of the elements of tortious interference is insufficient to state a plausible claim. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 677-79.

### c. **Conspiracy**.

Counts I and II of the first amended complaint allege, respectively, business conspiracy and common law civil conspiracy against all defendants. Under Virginia law, a civil conspiracy is: "(i) an agreement between two or more persons (ii) to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means, which (iii) results in damage to plaintiff." *Firestone v. Wiley*, 485 F. Supp. 2d 694, 703 (E.D. Va. 2007) (citation omitted). The claim "generally requires proof that the underlying tort was committed." *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co., Ltd.,* 682 F.3d 292, 311 (4th Cir. 2012) (quoting *Almy v. Grisham,* 273 Va. 68, 639 S.E. 2d 182, 189 (Va. 2007)). Where "there is no actionable claim for the underlying alleged wrong, there can be no action for civil conspiracy based on that wrong." *Citizens for Fauquier County v. SPR Corp.,* 37 Va. Cir. 44, 50 (1995).

For his civil conspiracy claim, Hild alleges that "Defendants agreed to accomplish unlawful purposes and used unlawful means" and that "Defendants committed overt acts causing direct injury to Plaintiff." FAC, Doc. 46 at ¶¶ 74-75. This count suffers from the same defects as his other claims. That is, Hild simply makes legal conclusions unaccompanied by "further factual

14

enhancement," which isn't entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555, 557. The plausibility standard articulated in *Twombly* and *Iqbal* demands "more than a sheer possibility that [Flagstar] acted unlawfully." *Iqbal*, 556 U.S. at 678.

Regarding business conspiracy, Va. Code § 18.2-499 establishes liability when two or more persons "combine, associate, agree, mutually undertake or concert together for the purpose of (i) willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever…" *Id*. at § 18.2-499(A). The Code also establishes liability for "attempt[ing] to procure the participation, cooperation, agreement or other assistance of any one or more persons to enter into any combination, association, agreement, mutual understanding or concert prohibited in subsection A." *Id*. at § 18.2-499(B).

Hild claims that the defendants conspired to injure him "in his trade, business, and profession" through "coordinated pricing cessation. operational substitution of Bloomberg pricing through custodian reporting systems, and reliance on that pricing to enforce defaults." FAC, Doc. 46 at ¶¶ 70-71. Hild doesn't make any allegations connecting Flagstar with the conduct prohibited in § 18.2-499. He doesn't explain how Flagstar combined, associated, agreed, mutually undertook, or concerted together with another to willfully and maliciously injure his reputation, trade, business or profession. *See Id*. at § 18.2-499(A).

Hild's only complaint relating to Live Well's lenders is their reliance on the allegedly distorted pricing to issue margin calls, declare defaults, and "force" Live Well into bankruptcy. FAC, Doc. 46 at ¶¶ 28, 48. This allegation does not amount to "sufficient factual matter" from which this Court can "draw the reasonable inference" that Flagstar is liable for conspiracy because it doesn't specify how Flagstar engaged in any concerted activity. *Iqbal*, 556 U.S. at 678. Hild does not allege that Flagstar combined or formed an agreement with the other defendants;

strategized with them; had any communications with the defendants; or acted willfully or with malice to specifically cause injury to Hild. *See* Va. Code § 18.2-499(A). All Hild alleges is that Flagstar relied on the pricings his former colleagues prepared and submitted. Reliance is not equivalent to participation in a conspiracy.

Hild also does not allege that Flagstar engaged in the type of activity prohibited in § 18.2-499(B). Hild instead groups all defendants as a collective whole, lists a number of acts in which they allegedly engaged in, and claims that such actions were done to injure *Live Well*. Fourth Circuit case law prohibits this exact practice of pleading "indeterminate assertions against all defendants." *SD3*, 801 F.3d at 422 (internal quotation marks and citations omitted). Hild must instead specify how each defendant is involved in the alleged conspiracy. *Id*. Because he hasn't done so and relies on bare allegations that Flagstar violated the law, his complaint does not cross the line of possibility and enter the realm of plausibility. *Iqbal*, 556 U.S. at 678-69.

Finally, both of Hild's conspiracy claims also fail because there is no actionable claim for an underlying tort. *Citizens for Fauquier County,* 37 Va. Cir. at 50; *Mission Integrated*, 158 F.4th at 565 (explaining that a business conspiracy claim under Virginia law must be based on some underlying tort). Because Hild fails to plausibly allege unjust enrichment or tortious interference, his common law conspiracy and business conspiracy claims cannot survive. For several reasons, therefore, Hild's conspiracy claims should be dismissed.

## CONCLUSION

For the foregoing reasons, Flagstar respectfully requests entry of an order dismissing Hild's claims against it under Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,

By: */s/ Wayne Anthony Holman*
Wayne Anthony Holman, Esq. (VSB No.97862)
Stradley Ronon Steven & Young, LLP
2000 K Street, NW, Suite 700 Washington, DC 20006
(P) 202-507-5180
(F) 202-822-0140
wholman@stradley.com

By: */s/ Joseph J. Shannon*
Joseph J. Shannon (P38041) (*Pro Hac Vice*)
Fawzeih H. Daher (P82995)
Bodman PLC
6th Floor at Ford Field
1901 St. Antoine St.
Detroit, MI 48226
Attorneys for Flagstar Bank, N.A.
jshannon@bodmanlaw.com

Dated: February 23, 2026      fdaher@bodmanlaw.com

## CERTIFICATE OF SERVICE

I, Wayne Anthony Holman, hereby certify that on February 23, 2026, I caused the foregoing Motion to Dismiss First Amended Complaint, Brief in support, and Proposed Order to be filed with the Court and served via the Court's ECF system.

Respectfully submitted,

By: */s/ Wayne Anthony Holman* _____
Wayne Anthony Holman, Esq. (VSB No.97862)
Stradley Ronon Steven & Young, LLP
2000 K Street, NW, Suite 700 Washington, DC 20006
(P) 202-507-5180
(F) 202-822-0140
wholman@stradley.com

By: */s/ Joseph J. Shannon* _____
Joseph J. Shannon (P38041) (*Pro Hac Vice*)
Fawzeih H. Daher (P82995)
Bodman PLC
6th Floor at Ford Field
1901 St. Antoine St.
Detroit, MI 48226
Attorneys for Flagstar Bank, N.A.
jshannon@bodmanlaw.com
Dated: February 23, 2026    fdaher@bodmanlaw.com