**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

```
---------------------------------------------------------------------x
                                                  :
MICHAEL C. HILD, individually and as owner of     :
business and marital property interests,          :
                                                  :
                          Plaintiff,              :    No. 3:25-cv-01050 (DJN)
                                                  :
            - against -                           :
                                                  :
DAN FOSTER et al.,                                :
                                                  :
                          Defendants.             :
                                                  :
---------------------------------------------------------------------x
```

**MEMORANDUM OF LAW OF DEFENDANT BLOOMBERG L.P. IN**
**SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

.

## PRELIMINARY STATEMENT

Although mentioned nowhere in either the original Complaint (ECF No. 1) or the First Amended Complaint (the "FAC") (ECF No. 46), plaintiff Michael Hild ("Hild") was convicted in 2021 of securities fraud, wire fraud and bank fraud, and conspiracy to commit those crimes, based on his conduct as CEO and majority shareholder of Live Well Financial, Inc. ("Live Well"). Live Well is now in chapter 7 bankruptcy. Hild alleges that the eleven defendants he names – which include several entities to which he was ordered to pay restitution after his criminal conviction – as well as other unnamed defendants all conspired to accomplish a variety of harms to Hild. He alleges the defendants are responsible for terminating Hild's entitlement to fees from Live Well for personal guarantees he provided to the company; exposing him to personal liability under those guarantees; "destroy[ing]" his ownership interest in Live Well and the company's "anticipated growth trajectory"; making him "subject to restitution obligations and ongoing enforcement"; and causing Hild's assets and financial resources to be "frozen, seized, or rendered inaccessible." Hild's FAC asserts six claims against defendant Bloomberg L.P. ("Bloomberg"), for statutory and common-law civil conspiracy, tortious interference, aiding and abetting unspecified torts, and unjust enrichment.

The FAC should be dismissed as against Bloomberg for three independent reasons. First, there appears to be no basis for diversity jurisdiction, and the Court therefore must dismiss this action because there is no other valid basis for federal jurisdiction. Second, this Court lacks personal jurisdiction over Bloomberg. And third, the FAC fails to state any viable claim against Bloomberg.

## STATEMENT OF RELEVANT FACTS

### Hild's Ownership and Control of Live Well

Live Well is a Virginia corporation whose status has been inactive since December 1, 2024. (Ex. 1.) Hild alleges he held a "controlling ownership interest in Live Well" and also "personally guaranteed key credit facilities of Live Well … as well as other material obligations." (FAC (ECF No. 46) ¶¶ 21, 64.)[1] In exchange for these personal guarantees, Hild alleges he stood to receive from Live Well fees that he alleges "constituted a substantial portion of Plaintiff's livelihood." (FAC ¶¶ 21, 26-27.)

### Live Well's Bankruptcy and Hild's Criminal Conviction

The FAC alleges that Hild "seeks recovery solely for personal injuries, including lost contractual guarantee-fee income, loss of future earning capacity, restitution-related enforcement harm, reputational and professional destruction, and other consequential damages, including direct personal economic injury associated with the loss in value of Plaintiff's personally held equity and contractual economic interests" in Live Well. (FAC ¶ 3.) All of these alleged "personal injuries" for which Hild seeks to recover in this case came about due to Live Well's bankruptcy and Hild's criminal conviction.

In 2019, Live Well was placed in involuntary chapter 7 bankruptcy in the District of Delaware by three creditors (all of them defendants in this case) after the company defaulted on

---

[1] The factual allegations of the FAC are taken as true solely for the purposes of this motion. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation") (cleaned up). Bloomberg reserves, and does not waive, any and all defenses and affirmative defenses that are not required to be raised on this motion pursuant to Rule 12(b).

various lending and funding arrangements. (Ex. 2.)[2] On July 1, 2019, the United States Trustee appointed David Carickhoff as chapter 7 trustee of Live Well (the "Trustee"). (Ex. 3.)

A few weeks later, on August 26, 2019, Hild was indicted in the Southern District of New York on five counts of securities fraud, wire fraud and bank fraud and conspiracy to commit those crimes, all based on his conduct as Live Well's CEO and majority shareholder. (Ex. 4.) After a fourteen-day jury trial in 2021, Hild was convicted on all five counts of the indictment. (Ex. 5.)

A few weeks after Hild's criminal conviction, on June 28, 2021, the Trustee filed a nineteen-count adversary complaint (the "Trustee Case") against Hild, his wife, and various companies they own, seeking "to recover tens of millions of dollars that represent the fruits of a fraudulent criminal scheme that substantially enriched each of the Defendants at the expense of Live Well and its creditors, as well as other damages caused by Defendants' fraudulent conduct." (Ex. 6, ¶ 1.) The Trustee alleges that "Hild, with the assistance of his top lieutenants, Eric G. Rohr and C. Darren Stumberger, caused Live Well to falsely inflate the values of its bond portfolio in order to convince third party financial institutions to lend Live Well more and more money … [which] Michael Hild, Rohr, and Stumberger used … to enrich themselves and to cover up, extend, and exacerbate their fraud." (*Id.* ¶ 2.) The Trustee further alleges that "Hild transferred much of the money he received to the remaining Defendants, including his wife, Laura D. Hild, and businesses that they jointly owned or controlled." (*Id*.) On December 27, 2022, the defendants in the Trustee's adversary proceeding filed an answer to the Trustee's complaint. (Ex. 7.) They did not assert any counterclaims or third-party claims. (*Id.*)

---

[2] On a motion to dismiss, the Court may take judicial notice of matters of public record such as court filings or records. *See Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396-97 (4th Cir. 2006) (per curiam).

On January 27, 2023, Hild was sentenced to 44 months of imprisonment and three years of supervised release. (Ex. 8, at pp. 3-4.) On September 23, 2024, Hild was ordered to pay restitution in the amount of $45,715,100.72 to a variety of victims, including the Live Well bankruptcy estate and certain of the defendants in this case (including the three creditors that filed the chapter 7 bankruptcy case). (Ex. 9.) Hild has not yet begun serving his sentence, having appealed his conviction to the Second Circuit Court of Appeals (Ex. 10), and been granted bail while that appeal is pending. (Ex. 11.) The Second Circuit recently affirmed the conviction and denied Hild's petitions for rehearing or rehearing *en banc*. (Ex. 12.) Hild has indicated his intention to file a petition for certiorari to the United States Supreme Court (Ex. 13), and he remains free on bail at this time. (Ex. 14.)

### Hild Files This Action Seeking Damages From Bloomberg and Others, Including Victims of His Fraud

In early December 2025, after the withdrawal of his counsel in the Trustee Case, Hild filed a *pro se* motion in that case to reopen discovery, which had closed more than a year and a half earlier. (Ex. 15.) Among the targets of Hild's proposed new discovery campaign were Bloomberg and its employee Lawrence Mattera, as well as some of the other defendants in this case. (*Id.*) That motion has not been decided.

Three weeks after Hild filed his motion to reopen discovery in the Trustee Case, he filed this case. Hild's original Complaint alleged what he called "a coordinated scheme by interested parties, market data vendors, and lenders to destroy Live Well Financial, Inc. ('Live Well') and Plaintiff Michael C. Hild through intentional manipulation of bond pricing data, followed by predatory margin calls and loan accelerations." (Compl. ¶ 1, ECF No. 1.) Hild asserted a single claim pursuant to Virginia's business conspiracy statute, which alleged that "Defendants combined, associated, and mutually undertook a course of conduct to willfully and maliciously

injure Plaintiff's business." (Compl. ¶ 42.) As the purported basis for his alleged damages, Hild alleged that "Live Well was forced into collapse" and "Plaintiff's ownership interests and future earnings were destroyed." (Compl. ¶¶ 37-38.)

Bloomberg and a number of other defendants filed motions to dismiss the original Complaint. (*See* ECF Nos. 7, 8, 33, 34, 37, 39, 45.) On February 2, 2026, Hild filed the FAC (ECF No. 46), and the Court subsequently denied the pending dismissal motions as moot. (ECF No. 52.) Like the original Complaint, the FAC seeks more than $900 million in "compensatory damages," (FAC ¶ 61), as well as treble damages, punitive damages, and other relief. (FAC ¶¶ 61-69 & p. 13 Parts A-F.) The FAC, however, abandons Hild's original theory of an alleged conspiracy to "manipulat[e] … bond pricing data." (Compl. ¶ 1.) Instead, Hild now alleges that after ICE Data Pricing & Reference Data LLC ("IDC"), a pricing source that Live Well's lenders allegedly had been using to value the company's securities, became unavailable, those lenders allegedly began using prices published by Bloomberg even though "[t]he governing agreements did not designate Bloomberg, or any other alternative pricing provider, as a successor or backup pricing source in the event IDC ceased providing prices." (FAC ¶ 38.) As alleged by Hild, those lenders (not Bloomberg) thereafter "issued margin calls, declared defaults, triggered cross-defaults, forced Live Well into bankruptcy, terminated Plaintiff's guarantee-fee income, and set in motion the cascading harms alleged herein." (FAC ¶¶ 35-48.)

Hild does not allege that he has (or had) any relationship with Bloomberg, contractual or otherwise, or that Bloomberg owed him any duty of any kind. Hild also does not allege that he ever dealt or communicated directly with Bloomberg. Simply put, Hild alleges only that Bloomberg published certain securities prices (which he does not allege were incorrect or manipulated), and that one or more third parties (not Bloomberg) used some of those prices as the

basis either for margin calls by, or acceleration of loans from, those third parties to Live Well. There is no allegation that Bloomberg knew of any of Live Well's financing arrangements (including Hild's alleged personal guarantees) or that Bloomberg made any margin call to Live Well, accelerated any loan to Live Well or, indeed, did anything at all directed at Live Well or Hild. Hild also does not allege that Bloomberg received any money or other benefit. The FAC nonetheless asserts six claims against Bloomberg. (FAC ¶¶ 70-87.)

## ARGUMENT

As explained below, there is no basis for federal jurisdiction, because the parties are not citizens of different states, and the Court therefore should dismiss the action because there is no other viable basis of federal jurisdiction. In addition, the Court lacks personal jurisdiction over Bloomberg, and Hild also does not allege the necessary elements of any of the six causes of action he seeks to assert, let alone how the factual allegations in the FAC underpinning these counts state a claim against Bloomberg.

## I.
## DIVERSITY JURISDICTION IS ABSENT, AND THIS COURT ALSO LACKS BOTH FEDERAL QUESTION AND SUPPLEMENTAL JURISDICTION

"Subject matter jurisdiction defines a court's power to adjudicate cases or controversies – its adjudicatory authority – and without it, a court can only decide that it does not have jurisdiction." *Burrell v. Bayer Corp.*, 918 F.3d 372, 379 (4th Cir. 2019) (quoting *United States v. Wilson*, 699 F.3d 789, 793 (4th Cir. 2012)). Here, Hild invokes diversity jurisdiction under 28 U.S.C. § 1332(a), federal question jurisdiction under 28 U.S.C. § 1331, and supplemental jurisdiction under 28 U.S.C. § 1367. (FAC ¶¶ 16-18.) Diversity jurisdiction appears to be absent, and the case should be dismissed for lack of any other valid basis of federal subject matter jurisdiction.

## A.    The Parties Are Not Citizens of Different States

Hild's original Complaint alleged that this Court has federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367(a). (Compl. ¶¶ 10-11.) The FAC now also alleges there is diversity jurisdiction under 28 U.S.C. § 1332(a). (FAC ¶ 16.) Although Hild, a resident of Virginia (FAC ¶ 1), alleges that "no Defendant is a citizen of Virginia," (FAC ¶ 16), that appears not to be the case based on the citizenship disclosure and declaration filed in this case by defendant Glen Haddock, which both indicate he is a citizen of Virginia. (*See* ECF Nos. 78-7, 79.) There is therefore no basis for diversity jurisdiction in this case.

## B.    The FAC Raises No Federal Question

Given that there is no diversity jurisdiction, the case should be dismissed, because there is no other valid basis of federal jurisdiction. As alternatives to diversity jurisdiction, the FAC also invokes federal question jurisdiction and supplemental jurisdiction. (FAC ¶¶ 17-18.) Neither applies here, and the case therefore should be dismissed.

"A federal question is 'necessarily raised' for purposes of § 1331 only if it is a 'necessary element of one of the well-pleaded state claims.'" *Burrell*, 918 F.3d at 381 (quoting *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 13 (1983)). "It is *not* enough that federal law becomes relevant by virtue of a 'defense ... anticipated in the plaintiff's complaint.'" *Id.* (complaint's allegations anticipating defendant's federal preemption defense did not confer federal-question jurisdiction) (quoting *Franchise Tax Bd.*, 463 U.S. at 14) (alteration and emphasis in original). This principle applies even where a complaint is "'replete' with federal-law references" and "even if both parties admit that the defense is the only question truly at issue in the case." *Id.* (internal citation omitted).

Hild alleges that "[t]his Court also has subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims necessarily raise substantial and disputed issues concerning

securities pricing, broker-dealer duties, and market-data publication." (FAC ¶ 17.) But the FAC asserts claims solely under state statutory and common law. (FAC ¶¶ 70-87.) Hild's factual allegations do not invoke or even mention federal law at all, much less federal law regarding "securities pricing, broker-dealer duties, and market-data publication." Instead, they focus on personal guarantees allegedly given by Hild, provisions of the applicable financing contracts, what was and was not disclosed in "[t]he governing repo and lending agreements," and so forth – contractual matters to which federal law does not apply and which do not even purport to implicate federal law. (FAC ¶¶ 21-60.) There is simply no federal question before this Court. And absent a claim that falls within the Court's original jurisdiction, supplemental jurisdiction under Section 1367 also is unavailable, as there is no federal claim to which Hild's claims can be supplemental. Accordingly, this action should be dismissed for lack of subject matter jurisdiction. *See* 28 U.S.C. § 1367(c)(3); *First Judson v. Bd. of Supervisors of Mathews Cnty., Virginia*, 436 F. Supp. 3d 852, 869 (E.D. Va.), *aff'd*, 828 F. App'x 180 (4th Cir. 2020) (dismissing remaining state law claim where only federal claim dismissed).

## II.
## THE COURT ALSO LACKS PERSONAL JURISDICTION OVER BLOOMBERG

A plaintiff bears the burden of alleging facts showing a *prima facie* case of personal jurisdiction over the defendant. *See Sneha Media & Ent., LLC v. Assoc. Broad. Co. P Ltd.*, 911 F.3d 192, 196-98 (4th Cir. 2018). As detailed below, Bloomberg is not subject to either general or specific personal jurisdiction in Virginia, and this action therefore should be dismissed as against Bloomberg.

### A.    Bloomberg Is Not Subject to General Personal Jurisdiction in Virginia

A court may assert general personal jurisdiction over a nonresident defendant only if the defendant's affiliations with the forum state are "so 'continuous and systematic' as to render

[the defendant] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). A corporation typically is considered to be "at home" in the state(s) where it is organized and headquartered. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). The same principle generally applies to a non-corporate business entity such as a partnership or limited liability company. *See BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 414 (2017) ("*Daimler*, however, applies to all state-court assertions of general jurisdiction over nonresident defendants; the constraint does not vary with the type of claim asserted or business enterprise sued."); *Nubi v. Numero Grp. LLC*, 2024 BL 196488, at \*3, 2024 WL 5360097, at \*3 (W.D. Va. Apr. 25, 2024), *rep. and rec. adopted*, 2024 BL 195036, 2024 WL 2869036 (June 6, 2024) (Virginia federal court lacked general jurisdiction over Illinois LLC with principal place of business in Illinois).

Bloomberg is a Delaware limited partnership headquartered in New York; it does not maintain an office in Virginia. (Exs. 16, 17.) Bloomberg thus cannot be considered "at home" in Virginia and is not subject to general personal jurisdiction here.

## B.  Bloomberg Is Not Subject to Specific Personal Jurisdiction in Virginia

Hild's original complaint asserted as potential bases for personal jurisdiction (1) the alleged in-forum "effects" of alleged misconduct outside Virginia, (Compl. ¶ 13), and (2) "the acts of co-conspirators taken in furtherance of the conspiracy." (Compl. ¶ 15.) In the FAC, Hild abandons both of those theories and now alleges only that the "Court has personal jurisdiction over Defendants because they purposefully directed conduct into Virginia causing injury here," (FAC ¶ 19), and, as to Bloomberg, that "Bloomberg L.P. publishes and disseminates financial data and pricing information purposefully directed into Virginia." (FAC ¶ 8.) Such conclusory allegations of "purposeful direction" do not to subject Bloomberg to personal jurisdiction in this state.

Specific personal jurisdiction "depends on an 'affiliation between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear Dunlop*, 564 U.S. at 919 (cleaned up). It "is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Id.* (citation omitted). For a defendant to be subject to specific jurisdiction, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014).

Hild alleges no facts showing Bloomberg engaged in conduct that was directed to the Commonwealth of Virginia and that relates in any way to his claims in this action. To the contrary, Hild alleges that Bloomberg published pricing that was "visible" to, and received and used by, one or more of the other defendants, (FAC ¶¶ 40, 42, 43, 46, 47, 59), all of whom Hild alleges are *not* in Virginia. (FAC ¶ 16; *see also* ECF Nos. 47, 59, 60, 63.) Nor does Hild allege that he (or anyone else at Live Well) saw, received or used Bloomberg prices in Virginia in the course of the events at issue – rather, Hild alleges he "did not obtain pricing datasets, submission histories, custodial substitution mechanics, or relevant communications until very recently." (FAC ¶ 33.)

Hild thus does not allege and cannot show any connection between any Bloomberg pricing that might have made its way to Virginia and the claims he asserts in this case. The action therefore should be dismissed as against Bloomberg.

### III.
### HILD FAILS TO STATE ANY CLAIM AGAINST BLOOMBERG

Plaintiff Hild is *pro se*, yet even for a *pro se* plaintiff to survive a motion to dismiss pursuant to Rule 12(b)(6), the complaint must state a claim that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007). A

claim has facial plausibility only where the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *See Twombly*, 550 U.S. at 556.

Hild's FAC fails plausibly to allege essential elements of all six of the claims he now purports to assert. Accordingly, the FAC should be dismissed with prejudice as against Bloomberg. *See R.A. v. McClenahan*, 122 F.4th 143, 146-48 (4th Cir. 2024) (holding "it is well established" that dismissal under Rule 12(b)(6) is with prejudice unless the court "specifically orders" otherwise (citing Rule 41(b))); *see also United States ex rel. Angel v. Scott*, 697 F. Supp. 3d 483, 495 (E.D. Va. 2023) (dismissing *pro se* plaintiff's second amended complaint with prejudice where it failed to state any plausible claims for relief and court found it would be futile to provide additional amendment opportunity).

## A.    <u>Hild Fails to State a Claim Against Bloomberg for Conspiracy</u>

Like the original Complaint, Hild's FAC asserts a claim against Bloomberg under Virginia Code Section 18.2-499, which criminalizes a conspiracy to "willfully and maliciously injur[e] another in his reputation, trade, business or profession by any means whatever," and Section 18.2-500, which provides a private civil cause of action to a victim of such a conspiracy. (FAC ¶¶ 70-73.) The FAC also includes a second conspiracy claim, for "common-law civil conspiracy." (FAC ¶¶ 74-75.)

Both of Hild's conspiracy claims should be dismissed, because the Virginia business conspiracy statute cannot apply to conduct that Hild himself alleges occurred wholly outside Virginia, and the FAC also does not plausibly allege the elements of a conspiracy claim under the statute or Virginia common law.

## 1. The Virginia Business Conspiracy Statute Does Not Apply Extraterritorially

"Nothing in the Constitution ensures unlimited extraterritorial recognition of all statutes or of any statute under all circumstances." *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 498 (1941). A state statute generally is presumed to apply only within that state's territory. *See Westwind Acquisition Co. LLC v. Universal Weather & Aviation, Inc.,* 668 F. Supp. 2d 749, 752 (E.D. Va. 2009). Indeed, "[t]he Commerce Clause [of the United States Constitution] … precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State." *Edgar v. MITE Corp.,* 457 U.S. 624, 642-43 (1982). In particular, "the Virginia Business Conspiracy Act is powerless to proscribe commercial activity allegedly constituting a business conspiracy where, as here, that activity took place entirely outside Virginia." *Gen. Assur. of Am., Inc. v. Overby-Seawell Co.*, 893 F. Supp. 2d 761, 780 (E.D. Va. 2012) (denying reconsideration of dismissal of statutory conspiracy claim), *aff'd*, 533 F. App'x 200 (4th Cir. 2013) (per curiam).

The FAC itself makes clear that any conduct by Bloomberg that might be relevant to Hild's claim under the Virginia business conspiracy statute occurred, if at all, outside Virginia. Hild alleges that none of the defendants, including Bloomberg, is a citizen of Virginia (FAC ¶ 16; *see also* ECF No. 47 (Hild's "Citizenship Disclosure Statement" alleging that no Defendant is a citizen of Virginia)), and alleges only that Bloomberg "publishes and disseminates financial data and pricing information purposefully directed into Virginia," without alleging any facts showing what that means or might have consisted of. (FAC ¶ 8.) Critically, though, Hild does not allege that any conduct *by Bloomberg* occurred, or caused direct injury to him, in Virginia.[3] (FAC ¶ 8.)

---

[3] To be sure, the FAC alleges in conclusory fashion that "Defendants committed overt acts in furtherance of the conspiracy in Virginia." (FAC ¶ 72.) But Hild does not allege any *facts* from which this Court could reasonably infer that any overt act by Bloomberg occurred in Virginia.

Accordingly, application of Virginia's business conspiracy statute to Bloomberg – an entity that is alleged to have acted, if at all, wholly outside Virginia – would violate the Commerce Clause, and Hild's first cause of action under Virginia's business conspiracy statute therefore should be dismissed with prejudice.

### 2. The FAC Does Not State a Conspiracy Claim Against Bloomberg

Even if the Court were to conclude the Virginia business conspiracy statute applied to Bloomberg's non-Virginia conduct, Hild's FAC does not state a claim under that statute or the common law.

To state a conspiracy claim under the Virginia statute, "a plaintiff must allege a combination of two or more persons for the purpose of willfully and maliciously injuring the plaintiff in his business, and resulting damage to the plaintiff." *See Skillstorm, Inc. v. Elec. Data Sys., LLC*, 666 F. Supp. 2d 610, 618 (E.D. Va. 2009) (cleaned up). Allegations of the legal elements of the claim, without supporting facts, are not sufficient. *See Goldmine World, Inc. v. Phoenix Beauty LLC,* 2024 BL 109295, at *17, 2024 WL 3843768, at *17 (E.D. Va. Mar. 7, 2024) (dismissing statutory conspiracy claim where allegations "are general legal conclusions and do not provide a factual basis to find a mutual undertaking or agreement as required by the statute"), *rep. and rec. adopted*, 2024 BL 106803, 2024 U.S. Dist. LEXIS 57315 (E.D. Va. Mar. 28, 2024); *Glob. Tel\*Link Corp. v. JACS Sols. Inc.*, 708 F. Supp. 3d 784, 803-04 (E.D. Va. 2023) (dismissing defendant's counterclaim where "[t]he paragraph [on legal malice] merely restates the relevant legal standard"). In addition, a plaintiff must allege "either an unlawful act or an unlawful purpose." *Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC*, 261 F. Supp. 2d 483, 499 (E.D. Va. 2003).

Like a statutory conspiracy claim, a common-law conspiracy claim requires factual allegations of "a combination of two or more persons, by some concerted action, to accomplish

some criminal or unlawful purpose, or to accomplish some purpose, not in itself criminal or unlawful, by criminal or unlawful means." *Hechler Chevrolet, Inc. v. Gen. Motors Corp.*, 230 Va. 396, 402 (1985).

Hild does not plausibly allege the necessary elements of either conspiracy claim. The FAC alleges the "Defendants combined and agreed to willfully and maliciously injure Plaintiff" and that "Defendants committed overt acts in furtherance of the conspiracy in Virginia." (FAC ¶¶ 70, 72.) But Hild does not allege any facts showing any such combination, overt acts, willfulness or malice. Such conclusory allegations that merely recite legal elements do not state a conspiracy claim under the Virginia statute or the common law. *See Goldmine World,* 2024 BL 109295, at \*17, 2024 WL 3843768, at \*17; *Glob. Tel\*Link Corp.*, 708 F. Supp. 3d at 803-04; *Chistoni v. HSBC Bank USA, N.A.*, 2017 BL 158314, at \*4, 2017 WL 1963902, at \*4 (E.D. Va. May 11, 2017); *Airlines Reporting Corp. v. Mundo Travel Corp.*, 2012 WL 13018971, at \*5-6 (E.D. Va. May 8, 2012), *rep. and rec. adopted*, 2012 WL 13019696 (E.D. Va. May 24, 2012); *Bay Tobacco,* 261 F. Supp. 2d at 498-500.

Hild also does not allege any underlying wrongful act *by Bloomberg*. At most, he alleges that "Defendants employed improper methods, including coordinated pricing cessation, operational substitution of Bloomberg pricing through custodian reporting systems, and reliance on that pricing to enforce defaults." (FAC ¶ 71.) Hild does not allege that, or explain how, any such alleged conduct might be unlawful. But more fundamentally, despite Hild's use of the term "Defendants," he does not allege Bloomberg played any role in any such alleged conduct, nor could he. Bloomberg is not alleged to have engaged in any "pricing cessation" – only IDC is alleged to have ceased pricing Live Well's bonds. (FAC ¶ 37.) Nor is there any allegation that Bloomberg had any role in substituting its pricing through what Hild himself describes as other

defendants' "custodian reporting systems." (FAC ¶ 71.) To the contrary, Hild alleges this was done solely by a group of defendants he defines as the "Lender Defendants," which does not include Bloomberg. (FAC ¶ 28.) Hild alleges those Lender Defendants (not Bloomberg) "relied upon Bloomberg pricing—whether accessed through U.S. Bank's third-party pricing reports, directly from Bloomberg's data services, or through a combination of both—as operative pricing data for valuation, margining, default, and enforcement decisions" of those Lender Defendants. (FAC ¶ 46.) And of course, Hild does not (and could not) allege Bloomberg was a lender to Live Well, and Bloomberg therefore is not (and could not be) alleged to have declared or enforced any margin calls or defaults.

For all these reasons, Hild's first and second claims for conspiracy should be dismissed with prejudice.

**B.**    **Hild Fails to State a Claim Against Bloomberg for Tortious Interference**

For his third and fourth causes of action, Hild purports to assert claims for tortious interference with contract and with business expectancy. Under Virginia law, the elements of a claim for tortious interference, whether with a contract or a business expectancy, are: (i) the existence of a valid contract or business expectancy; (ii) knowledge of the contract or expectancy on the part of the alleged interferor; (iii) intentional interference inducing or causing a breach or termination of the contract or expectancy; and (iv) resulting damage to the party whose relationship or expectancy has been disrupted. *See DurretteBradshaw, P.C. v. MRC Consulting, L.C.*, 277 Va. 140, 145 (2009).

The FAC fails to plausibly allege these elements for either of Hild's tortious interference claims. While Hild alleges the existence of guarantee-fee agreements as putative contracts that he alleges were interfered with (FAC ¶ 76), he does not identify *any* business expectancy, alleging only that he had unspecified "reasonable business expectancies." (FAC ¶ 80.)

Moreover, Hild does not allege that Bloomberg had any knowledge at all of his alleged guarantee-fee agreements or unspecified "reasonable business expectancies," nor does he allege any facts to show that Bloomberg did anything to interfere with those agreements or expectancies, or that any of those agreements or expectancies was breached or terminated at all, much less due to any action by Bloomberg.

Hild does not state any claim for tortious interference, and his third and fourth claims therefore should be dismissed with prejudice.

## C. Hild Fails to State a Claim Against Bloomberg for "Aiding and Abetting"

Hild's fifth cause of action, which is pleaded against Bloomberg and Intercontinental Exchange, Inc. only, is titled "Aiding and Abetting." (FAC at 12 & ¶¶ 83-85.)

Neither the Supreme Court of Virginia nor the Fourth Circuit Court of Appeals has recognized the existence of such a cause of action. *See Jordan v. Osmun*, 2016 BL 408612, at *4-6, 2016 WL 7173784, at *4-6 (E.D. Va. Dec. 8, 2016) (discussing cases).

The Virginia Supreme Court nonetheless has held that such a claim, if it were to exist, would require allegations (1) of a viable underlying tort, *see Uplinger v. Alexandria Overlook Condo. Council of Co-owners,* 2018 BL 23394, at *4, 2018 WL 3062247, at *4 (Va. June 21, 2018) (unpublished) ("Assuming without deciding that we would recognize such a cause of action in Virginia, just as we assumed without deciding the same in *Halifax*…" and dismissing claim because plaintiff failed to state a valid claim for breach of fiduciary duty), and (2) of facts showing the defendant knew of the commission of the underlying tort and participated in it, *see Halifax Corp. v. Wachovia Bank*, 268 Va. 641, 659-64 (2004) (assuming *arguendo* such a claim exists and affirming dismissal of claim where no allegation that defendant knew of underlying breach or participated in it).

Here, even assuming an aiding and abetting claim exists – which is not the case under Virginia law – Hild alleges none of its elements. Hild does not say what wrongdoing he claims was aided and abetted, alleging only that "Primary violations were committed by co-defendants." (FAC ¶ 83.) However, as detailed above, there is no viable underlying tort, because all four of Hild's conspiracy and tortious interference claims fail as a matter of law. Nor does Hild even attempt to allege (because he cannot allege) that Bloomberg knew of any other defendant's alleged tortious conduct or that Bloomberg participated in such conduct.

Hild's fifth claim for "Aiding and Abetting" therefore should be dismissed with prejudice.

**D.      Hild Fails to State a Claim Against Bloomberg for Unjust Enrichment**

Hild's sixth and final cause of action, for unjust enrichment, is asserted only against Bloomberg and defendants Intercontinental Exchange, Inc., ICE Data Pricing & Reference Data LLC, and the Lender Defendants. (FAC ¶¶ 86-87.) To state a cause of action for unjust enrichment, a plaintiff must allege that: (1) he conferred a benefit on the defendant; (2) the defendant knew of the benefit and should reasonably have expected to repay the plaintiff; and (3) the defendant accepted or retained the benefit without paying for its value. *See Schmidt v. Household Fin. Corp., II*, 276 Va. 108, 116 (2008). Critically for Hild's claim here, it is not enough for a plaintiff to allege a benefit to the defendant – the plaintiff must allege "other facts to raise an implication that the defendant promised to pay the plaintiff for such benefit." *Nedrich v. Jones,* 245 Va. 465, 476 (1993) (citing *Mullins v. Mingo Lime & Lumber Co.,* 176 Va. 44, 51 (1940)).

The FAC contains only a single conclusory allegation (*see* FAC ¶ 86), without any factual allegations, that Bloomberg received any benefit from Hild or anyone else, much less that Bloomberg knew of such a benefit and should reasonably have expected to repay Hild, or that

Bloomberg accepted or retained such a benefit without paying for its value. Hild's sixth claim for unjust enrichment should be dismissed as against Bloomberg with prejudice.

## IV.
## BLOOMBERG JOINS IN THE OTHER DEFENDANTS' MOTIONS TO THE EXTENT THEY MAKE ARGUMENTS THAT ARE EQUALLY APPLICABLE TO BLOOMBERG

Other defendants in this action also have filed or will be filing motions to dismiss the FAC. (*See* ECF Nos. 74, 75, 77, 78, 80, 81.) To the extent that such motions set forth additional bases for dismissal that also apply to Bloomberg, Bloomberg hereby incorporates them herein by reference and asks that the Court dismiss this action as against Bloomberg on those additional bases.

## CONCLUSION

For all the foregoing reasons, defendant Bloomberg respectfully requests that the Court dismiss Hild's First Amended Complaint in its entirety as against Bloomberg with prejudice and grant such other and further relief as the Court deems just and proper under applicable law.

Dated:   March 2, 2026

Respectfully submitted,

By:   /s/_____
Jason R. Hodge (VSB No. 90793)
*Attorney for Defendant Bloomberg L.P.*
NELSON MULLINS RILEY &
SCARBOROUGH LLP
1021 East Cary Street, Suite 2120
Richmond, VA 23219
Telephone: (804) 533-3891
Facsimile: (804) 616-4129
jason.hodge@nelsonmullins.com

Anne E. Beaumont (*pro hac vice*)
Diana Arsanjani Reisman (*pro hac vice*)
*Attorneys for Defendant Bloomberg L.P.*
FRIEDMAN KAPLAN SEILER
ADELMAN & ROBBINS LLP
7 Times Square
New York, New York 10036-6516
Telephone: (212) 833-1100
abeaumont@fklaw.com
dreisman@fklaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2026, a true and correct copy of the foregoing was electronically filed with the Clerk of Court and served via ECF on all counsel of record and parties registered to receive service via the Court's CM/ECF system.

/s/

Jason R. Hodge (VSB No. 90793)
*Attorney for Defendant Bloomberg L.P.*
NELSON MULLINS RILEY &
SCARBOROUGH LLP
1021 East Cary Street, Suite 2120
Richmond, VA 23219
Telephone: (804) 533-3891
Facsimile: (804) 616-4129
jason.hodge@nelsonmullins.com