**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

MICHAEL C. HILD,

                    *Plaintiff*,

v.

DAN FOSTER, *et al.*,

                    *Defendants*.

Civil Action No. 3:25-cv-1050-DJN

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS INTERCONTINENTAL EXCHANGE, INC., ICE DATA PRICING & REFERENCE DATA, LLC, AND CHRISTOPHER KRUPA'S MOTION TO DISMISS THE AMENDED COMPLAINT**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................1

FACTUAL BACKGROUND ..................................................................................2

    A.    Live Well's Bankruptcy & Plaintiff's Criminal Conviction .....................2

    B.    Plaintiff's Allegations ..............................................................................4

LEGAL STANDARD ..........................................................................................5

    A.    Rule 12(b)(1) ............................................................................................5

    B.    Rule 12(b)(6) ............................................................................................6

ARGUMENT ......................................................................................................6

I.      THE COURT LACKS SUBJECT MATTER JURISDICTION ....................6

II.    THE COMPLAINT FAILS TO STATE A CLAIM ..................................8

    A.    The Complaint's Causes Of Action Do Not Plausibly State Any Claim For Relief ...........................................................................9

            1.    The Complaint Fails To State A Claim For Virginia Business Conspiracy ........................................................9

            2.    The Complaint Fails To State A Claim For Civil Conspiracy ..................10

            3.    The Complaint Fails To State A Claim For Tortious Interference With A Contract ........................................11

            4.    The Complaint Fails To State A Claim For Tortious Interference With Business Expectancy ........................12

            5.    The Complaint Fails To State A Claim For Aiding And Abetting ............13

            6.    The Complaint Fails To State A Claim For Unjust Enrichment ...............14

    B.    Plaintiff Cannot Relitigate His Criminal Convictions In This Civil Proceeding Against The Victims Of His Crime ....................................15

    C.    Plaintiff Cannot Recover Derivatively For Alleged Injuries To Live Well...........16

    D.    The Statute of Limitations Bars Plaintiff's Claims ...............................17

CONCLUSION ..................................................................................................19

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*A Soc'y Without A Name v. Virginia,*
 655 F.3d 342 (4th Cir. 2011) .................................................6

*Aggarwal v. Sikka,*
 2012 WL 12870349 (E.D. Va. June 12, 2012) ..............................9, 10

*Ancient Egyptian Arabic Ord. Nobles Mystic Shrine of N. & S. Am. & its Jurisdiction, Inc. v.
 Most Worshipful Prince Hall Grand Lodge of Virginia, Free & Accepted Masons, Inc.,*
 2009 WL 4068454 (E.D. Va. Nov. 19, 2009)............................7

*Andrews v. Ring,*
 266 Va. 311 (2003) .................................................10

*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009).................................................6

*AvalonBay Communities, Inc. v. Willden,*
 2009 WL 2431571 (E.D. Va. Aug. 7, 2009),
 *aff'd,* 392 F. App'x 209 (4th Cir. 2010) .................................................15

*Bellamy v. White,*
 2014 WL 11309743 (D.S.C. Aug. 8, 2014),
 *report & recommendation adopted,* 2016 WL 1958005 (D.S.C. May 3, 2016).......................8

*Brown v. United States,*
 2021 WL 1876129 (E.D. Va. May 10, 2021),
 *aff'd,* 2022 WL 2901718 (4th Cir. July 22, 2022) .............................5, 6

*Dunlap v. Cottman Transmissions Sys., LLC,*
 576 F. App'x 225 (4th Cir. 2014) .................................................17, 18

*Firestone v. Wiley,*
 485 F. Supp. 2d 694 (E.D. Va. 2007) .................................................11, 14

*Gov't Emps. Ins. Co. v. Google, Inc.,*
 330 F. Supp. 2d 700 (E.D. Va. 2004) .................................................9, 10, 13

*GTSI Corp. v. Wildflower Int'l, Inc.,*
 2009 WL 2160451 (E.D. Va. July 17, 2009).................................................12

*Jones v. Shooshan,*
 855 F. Supp. 2d 594 (E.D. Va. 2012) .................................................8

*Krawatsky v. Avrunin*,
2018 WL 4562962 (D. Md. Sept. 21, 2018) ...............................................6, 7

*Labovitz v. Washington Times Corp.*,
172 F.3d 897 (D.C. Cir. 1999) ...................................................................17

*Livia Properties, LLC v. Jones Lang LaSalle Ams., Inc.*,
2015 WL 4711585 (W.D. Va. Aug. 7, 2015), *aff'd sub nom. Livia Properties, II, LLC
v. Jones Lang La Salle Ams., Inc.*, 646 F. App'x 322 (4th Cir 2016) ..................9, 11

*Masco Contractor Servs. East, Inc. v. Beals*,
279 F. Supp. 2d 699 (E.D. Va. 2003) ...........................................................11, 13

*Mid-State Fertilizer Co. v. Exch. Nat. Bank of Chicago*,
877 F.2d 1333 (7th Cir. 1989) ....................................................................17

*Mission Integrated Techs., LLC v. Clemente*,
158 F.4th 554 (4th Cir. 2025) .....................................................................18

*Moore v. United Int'l Investigative Servs.*,
209 F. Supp. 2d 611 (E.D. Va. 2002) ...........................................................13

*Moschetti v. Nixon Peabody, LLP*,
2024 WL 2750010 (E.D. Va. May 29, 2024) .................................................11

*Owen v. Liberty Univ.*,
2020 WL 1856798 (W.D. Va. Apr. 13, 2020),
*aff'd*, 2022 WL 127894 (4th Cir. Jan. 13, 2022) ...........................................6

*Paine v. Wells Fargo Bank, N.A.*,
2011 WL 3236390 (E.D. Va. July 12, 2011) .................................................8

*Percival Partners Ltd. v. Nduom*,
2023 WL 2088421 (E.D. Va. Feb. 17, 2023), *aff'd*, 99 F.4th 696 (4th Cir. 2024)............5, 6, 7

*RBA Cap., LP v. Anonick*,
2009 WL 960090 (E.D. Va. Apr. 8, 2009) ....................................................16

*Safe Haven Wildlife Removal & Prop. Mgmt. Experts, LLC v. Meridian Wildlife Servs. LLC*,
716 F. Supp. 3d 432 (W.D. Va. 2024) ..........................................................17, 18

*SageWater, LLC v. Hossfeld*,
2024 WL 3354711 (E.D. Va. June 20, 2024) .................................................11

*SEC v. Resnick*,
604 F. Supp. 2d 773 (D. Md. 2009) .............................................................15

*Sedlack v. Braswell Servs. Grp, Inc.*,
    134 F.3d 219 (4th Cir. 1998) ............................................... 15

*Shirvinski v. U.S. Coast Guard*,
    673 F.3d 308 (4th Cir. 2012) ............................................... 10

*Simpkins v. SunTrust Mortg., Inc.*,
    2013 WL 1966904 (E.D. Va. May 7, 2013) ........................... 8

*Smith Setzer & Sons, Inc. v. S.C. Procurement Review Panel*,
    20 F.3d 1311 (4th Cir. 1994) ............................................... 16

*Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.*,
    299 F. Supp. 2d 565 (E.D. Va. 2004) ................................... 18

*William v. AES Corp.*,
    28 F. Supp. 3d 553 (E.D. Va. 2014) ..................................... 8

*Witthohn v. Fed. Ins. Co.*,
    164 F. App'x 395 (4th Cir. 2006) (per curiam) ...................... 2

**Statutes**

Va. Code § 8.01-230 ............................................................... 18

Va. Code § 18.2-499 ............................................................... 9

Va. Code § 18.2-500 ............................................................... 9

**Other Authorities**

*Restatement Third of the Law: Liability Economic Harm* § 28 ............... 13, 14

Defendants Intercontinental Exchange, Inc. ("ICE"), ICE Data Pricing & Reference Data, LLC ("PRD"), and Christopher Krupa (collectively, the "ICE Defendants") respectfully submit this memorandum in support of their motion to dismiss with prejudice the Amended Complaint (Dkt. No. 46, "Complaint" or "Compl.") filed by Plaintiff Michael C. Hild.

## PRELIMINARY STATEMENT

Plaintiff Michael C. Hild brings this Complaint to try to shift blame for his own fraudulent conduct—which led to his fraud conviction and restitution orders exceeding $45 million—onto the very entities that he defrauded. To the extent anything approaching a coherent story can be extracted from the Complaint's scattershot account, Plaintiff alleges that the company he founded, Live Well Financial, Inc. ("Live Well"), was forced into bankruptcy because Live Well's lenders valued certain bonds collateralizing Live Well's loans using Bloomberg's published prices for the bonds, rather than PRD's. Although not pled with any supporting facts or details, Plaintiff then jumps to the conclusion that the pricing providers, lenders, and Live Well's own executives were conspiring together with the intent of triggering defaults and cross-defaults, enforcing Plaintiff's personal guarantees, and bankrupting Live Well. Plaintiff's claims against the ICE Defendants must be dismissed for numerous reasons.

First, the Complaint fails at the outset because this Court lacks subject matter jurisdiction. Plaintiff fails to affirmatively allege facts necessary to establish diversity jurisdiction, and no federal question exists on the face of his Complaint. Second, the Complaint fails to state any plausible claim for relief on the merits. As to each of his claims, Plaintiff falls woefully short of meeting his burden to plead facts (as opposed to conclusory legal assertions) that make his claims plausible. Moreover, the Complaint is barred by collateral estoppel because it is an impermissible attempt to relitigate issues that were conclusively resolved against Plaintiff in his own criminal prosecution. Plaintiff cannot use this civil proceeding to undo the result of the criminal trial.

Furthermore, the principal injuries that Plaintiff identifies in the Complaint are derivative of the harm suffered by Live Well, so Plaintiff lacks standing to pursue them. Finally, all of Plaintiff's claims are barred by the applicable statutes of limitations. Plaintiff's claims against the ICE Defendants should accordingly be dismissed.

**FACTUAL BACKGROUND**

**A.    Live Well's Bankruptcy & Plaintiff's Criminal Conviction**

The facts underlying this lawsuit stem from Plaintiff's own multi-year scheme to inflate bond values to secure large loans on behalf of Live Well.

The Second Circuit has summarized the details of Mr. Hild's fraudulent scheme as follows. In 2014, Live Well purchased certain interest-only bonds and "financed the acquisition and growth of its bond portfolio largely through loans." Ex. A at 5.[1] Many of Live Well's "lending arrangements were structured as bond repurchase agreements"—that is, "a collateralized loan in which title of the collateral is transferred to the lender." *Id.* "[T]he loan amount was determined by discounting the value of the underlying bond," allowing lenders to "require partial repayment of the loan amount via a 'margin call'" if the value decreased and allowing Live Well to "borrow more via a 'reverse margin call'" if the value increased. *Id.* at 5–6. The loan agreements contemplated that the lenders would value the bonds based on prices published by PRD. *Id.* at 6. At that time, PRD "lacked the capability to value the bonds and so relied on 'broker quotes' to provide pricing." *Id.* at 6–7. Live Well was a provider of those broker quotes. *Id.* In 2015, Live Well began modeling the bonds internally "based on assumptions that deviated from factors 'in the market'" leading to prices that "were typically higher than those for which the bonds could be

---

[1] On a motion to dismiss, the Court may take judicial notice of matters of public record such as court filings or records. *See Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396–97 (4th Cir. 2006) (per curiam).

sold." Ex. A at 7. Live Well then fed those prices to PRD for publishing. *Id.* at 7–8. Essentially, "Live Well would identify a particular bond it wished to buy, model the bond" using its internal model, submit that valuation to PRD, "and then approach the lenders, who would look up the price on [PRD]'s database and use that price to set the terms of the repo agreement." *Id.* at 8. Live Well would simultaneously buy the bond at its actual, lower market value, "deliver the bond to the lenders, and receive a cash loan." *Id.* "By the end of 2015, this process had resulted in an increase in the value of the company's portfolio of over $47 million." *Id*.

In 2019, after the scheme unraveled, Live Well's creditors "issued margin calls" and "declared defaults" and initiated an involuntary chapter 7 bankruptcy in the District of Delaware. *See* Ex. B; Compl. ¶¶ 47–48. On July 1, 2019, the United States Trustee appointed David Carickhoff as the chapter 7 trustee of Live Well (the "Trustee"). Ex. C. On June 28, 2021, the Trustee filed a nineteen-count adversary complaint against Plaintiff and others seeking "to recover tens of millions of dollars that represent the fruits of a fraudulent criminal scheme that substantially enriched each of the Defendants at the expense of Live Well and its creditors." Ex. D ¶ 1. The Trustee alleged that Plaintiff "caused Live Well to falsely inflate the values of its bond portfolio in order to convince third party financial institutions to lend Live Well more and more money," which Plaintiff used to "enrich [himself] and to cover up, extend, and exacerbate [his] fraud." *Id.* ¶ 2.

On August 26, 2019, Plaintiff was indicted in the Southern District of New York for actions he took at Live Well. Ex. E. On April 30, 2021, Plaintiff was convicted on five counts: (i) securities fraud, (ii) wire fraud, (iii) bank fraud, (iv) conspiracy to commit securities fraud, and (v) conspiracy to commit wire fraud and bank fraud. Exs. D ¶ 204, F. Plaintiff was sentenced to serve 44 months of imprisonment, Ex. F at 3, and ordered to pay over $45 million in restitution to the

victims of his offenses (including four Defendants in this action). Ex. G at 1, 23–24. The Second Circuit affirmed the judgment of the District Court in an opinion issued on July 30, 2025, observing, among other things, that "plenty of evidence was presented at trial that [Plaintiff] deceived Live Well's lenders by (1) negotiating loan agreements based on the understanding that [PRD] would provide the market price of the bonds—that is, the prices at which the bonds could be immediately bought and sold—while (2) feeding prices to [PRD] that were well above the market price." Ex. A at 14.

### B. Plaintiff's Allegations

On December 23, 2025, Plaintiff filed this lawsuit naming as Defendants, among others, ICE and Mr. Krupa. On February 2, 2026—before ICE or Mr. Krupa responded to the initial complaint—Plaintiff filed the operative Complaint adding PRD as a Defendant. *See* Dkt. Nos. 1, 46. Plaintiff purports to "seek[] recovery solely for personal injuries, including lost contractual guarantee fee-income, loss of future earning capacity, restitution-related enforcement harm, reputational and professional destruction, and other consequential damages" that flowed from the Lender Defendants[2] "forcing Live Well into default and bankruptcy." Compl. ¶¶ 3, 28. But the Complaint fails to identify any conduct by the ICE Defendants that caused any such harms.

A generous reading of the Complaint includes only the following allegations regarding the ICE Defendants' participation in the relevant events:

- Defendants (generally) "knew or reasonably should have known that the coordinated pricing conduct alleged herein would foreseeably cause defaults, cross-defaults, and cascading enforcement actions resulting in direct personal economic injury to Plaintiff." *Id.* ¶ 28;

---

[2] The Lender Defendants include Defendants Flagstar Bank, FSB ("Flagstar"), Customers Bank, Industrial and Commercial Bank of China Financial Services LLC ("ICBC"), and Mirae Asset Securities (USA) Inc. ("Mirae").

- "While [PRD] continued to provide pricing for the bonds, lenders and counterparties relied upon that pricing for valuation, margining, and related enforcement purposes. [PRD] subsequently ceased pricing Live Well's bonds and posted null or no values for those instruments." *Id.* ¶¶ 36–37;

- "After [PRD] ceased providing prices and posted null or no values, third-party pricing reports generated by U.S. Bank, as securities custodian, automatically defaulted to Bloomberg pricing when [PRD] values became unavailable." *Id.* ¶ 42;

- "Through communications with Defendant Christopher Krupa, Haddock had advance knowledge of the date on which [PRD] would cease pricing." *Id.* ¶ 53; and

- "On information and belief, Haddock created, controlled, or directed the monthly pricing spreadsheet process and caused static bond marks to be submitted to [PRD] for multiple months prior to [PRD]'s cessation of pricing." *Id.* ¶ 58.

Notably absent from the Complaint are any allegations regarding the ICE Defendants' reason, purpose, or motive for ceasing pricing of the bonds, knowledge or acquiescence in any other Defendants' action, or any involvement with the pricing of the bonds after ceasing its own pricing. Indeed, the allegations against the ICE Defendants suggest only that they were reasonably conducting their daily business of servicing their customers by providing, when able, pricing data for securities.

## LEGAL STANDARD

### A.     Rule 12(b)(1)

"Federal Rules of Civil Procedure Rule 12(b)(1) provides for the dismissal of an action if the Court lacks subject matter jurisdiction." *Percival Partners Ltd. v. Nduom*, 2023 WL 2088421, at *3 (E.D. Va. Feb. 17, 2023), *aff'd*, 99 F.4th 696 (4th Cir. 2024). "A defendant moving to dismiss a complaint for lack of subject matter jurisdiction may argue that the plaintiff's complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Brown v. United States*, 2021 WL 1876129, at *2 (E.D. Va. May 10, 2021), *aff'd*, 2022 WL 2901718 (4th Cir. July 22, 2022). In this scenario, "the court assumes all the facts alleged in the complaint to be true and the

plaintiff is afforded the same procedural protection as she would receive under a Rule 12(b)(6) consideration." *Id.* "It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." *Percival Partners Ltd.*, 2023 WL 2088421, at \*3 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

**B.      Rule 12(b)(6)**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (internal quotations omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that 'the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). "A court need not 'accept the legal conclusions drawn from the facts' or 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Owen v. Liberty Univ.*, 2020 WL 1856798, at \*3 (W.D. Va. Apr. 13, 2020), *aff'd*, 2022 WL 127894 (4th Cir. Jan. 13, 2022) (quoting *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## ARGUMENT

## I.      THE COURT LACKS SUBJECT MATTER JURISDICTION

"Under the 'well-pleaded complaint' rule, facts showing the existence of subject matter jurisdiction 'must be affirmatively alleged in the complaint.'" *Krawatsky v. Avrunin*, 2018 WL 4562962, at \*4 (D. Md. Sept. 21, 2018) (quoting *Pinkley, Inc. v. City of Frederick*, 191 F.3d 394,

399 (4th Cir. 1999)). "Therefore, a complaint must contain allegations 'affirmatively and distinctly' establishing federal grounds 'not in mere form, but in substance' and 'not in mere assertion, but in essence and effect.'" *Id.* (internal quotations omitted) (quoting *Burgess v. Charlottesville Sav. & Loan Assoc.*, 477 F.2d 40, 43 (4th Cir. 1973)). Here, Plaintiff fails to sufficiently plead subject matter jurisdiction.

Plaintiff first asserts that the Court has diversity jurisdiction because he "is a citizen of the Commonwealth of Virginia, no Defendant is a citizen of Virginia, and the amount in controversy exceeds $75,000, exclusive of interest and costs." Compl. ¶ 16. This conclusory assertion is insufficient under the well-pleaded complaint rule because a plaintiff may not establish diversity jurisdiction by "plead[ing] a negative, merely alleging that [p]laintiffs' partners and members are *not* citizens of certain states." *Percival Partners Ltd.*, 2023 WL 2088421, at *5. The Complaint fails to allege the domicile of *any* Defendant. Compl. ¶¶ 4–15; *see also* Dkt. No. 47 (Plaintiff's Citizenship Disclosure Statement failing to affirmatively identify the domicile of any Defendants). Moreover, even if Plaintiff had included sufficient domicile information for each identified Defendant (and no Defendant was from Virginia), Plaintiff's inclusion of 1-50 Doe Defendants would also defeat diversity jurisdiction. *See, e.g.*, *Ancient Egyptian Arabic Ord. Nobles Mystic Shrine of N. & S. Am. & its Jurisdiction, Inc. v. Most Worshipful Prince Hall Grand Lodge of Va., Free & Accepted Masons, Inc.*, 2009 WL 4068454, at *2 (E.D. Va. Nov. 19, 2009) (dismissing for lack of jurisdiction where plaintiffs failed to "show that the John Doe defendants are citizens of states other than the Plaintiffs' states of citizenship"). Plaintiff has not met his burden to establish diversity jurisdiction.

Plaintiff contends in the alternative that the Court has federal question jurisdiction under 28 U.S.C. § 1331 because "Plaintiff's claims necessarily raise substantial and disputed issues

concerning securities pricing, broker-dealer duties, and market-data publication." Compl. ¶ 17.

That is baseless. "Under the well-pleaded complaint rule, 'federal question jurisdiction exists only

when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'"

*Simpkins v. SunTrust Mortg., Inc.*, 2013 WL 1966904, at *3 (E.D. Va. May 7, 2013) (quoting

*Campbell v. Hampton Roads Bankshares, Inc.*, 925 F. Supp. 2d 800, 803 (E.D. Va. 2023)). Here,

Plaintiff's Complaint includes only state-law claims and it does not allege any cause of action that

would "necessarily depend on resolution of a substantial question of federal law." *Paine v. Wells

Fargo Bank, N.A.*, 2011 WL 3236390, at *4 (E.D. Va. July 12, 2011). Thus, federal question

jurisdiction does not exist. And without federal question jurisdiction over a single claim, any

theory of supplemental jurisdiction likewise fails. *Bellamy v. White*, 2014 WL 11309743, at *3

(D.S.C. Aug. 8, 2014), *report & recommendation adopted*, 2016 WL 1958005 (D.S.C. May 3,

2016).

## II.    THE COMPLAINT FAILS TO STATE A CLAIM

Even a *pro se* plaintiff, such as Plaintiff here, is required under the Federal Rules to include

in his Complaint "sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *William v. AES Corp.*, 28 F. Supp. 3d 553, 561 (E.D. Va. 2014) (internal

quotations omitted) (quoting *Iqbal*, 556 U.S. at 678). And while "the Court must accept all of the

complaint's well-pleaded allegations as true . . . . that requirement applies only to facts, not to legal

conclusions." *Jones v. Shooshan*, 855 F. Supp. 2d 594, 599 (E.D. Va. 2012). Here, Plaintiff's

Complaint rests on legal labels, rather than well-pleaded factual allegations. Even liberally

construed, the Complaint fails to state a plausible claim against any of the ICE Defendants and

should therefore be dismissed in its entirety.[3]

---

[3] It is not clear from the face of the Complaint which claims are being brought against which
Defendants. While Counts I–IV appear to be brought against all Defendants, Count V for aiding

## A. The Complaint's Causes Of Action Do Not Plausibly State Any Claim For Relief

The Complaint should be dismissed because Plaintiff's individual causes of action fall well short of plausibly alleging any cognizable legal claim.

### 1. The Complaint Fails To State A Claim For Virginia Business Conspiracy

To state a claim under Virginia's business conspiracy statute, Va. Code §§ 18.2-499, 18.2-500, the plaintiff must allege: "(1) a combination of two or more persons for the purpose of willfully and maliciously injuring plaintiff in his business, and (2) resulting damage to plaintiff." *Aggarwal v. Sikka*, 2012 WL 12870349, at *2 (E.D. Va. June 12, 2012) (quoting *Allen Realty Corp. v. Holbert*, 227 Va. 441, 449 (1984)). "[B]usiness conspiracy, like fraud, must be pleaded with particularity, and with more than 'mere conclusory language.'" *Gov't Emps. Ins. Co. v. Google, Inc.*, 330 F. Supp. 2d 700, 706 (E.D. Va. 2004) (citation omitted). Further, "actions for common law civil conspiracy and statutory business conspiracy lie only if a plaintiff sustains damages as a result of an act that is itself wrongful or tortious." *Livia Properties, LLC v. Jones Lang LaSalle Ams., Inc.*, 2015 WL 4711585, at *9 (W.D. Va. Aug. 7, 2015), *aff'd sub nom. Livia Properties, II, LLC v. Jones Lang La Salle Ams., Inc.*, 646 F. App'x 322 (4th Cir 2016).

Plaintiff comes nowhere near meeting his burden to plead business conspiracy with particularity. *Id.* at *4 ("[A] claim of business conspiracy does not comply with the specificity requirements of Rule 9(b) and must be dismissed where there are insufficient allegations from which to infer a meeting of the minds and not mere parallel conduct."). The Complaint contains no allegations that any ICE Defendant "combine[d], associate[d], agree[d], mutually undert[ook]

---

and abetting is brought only against Bloomberg L.P. and ICE, suggesting that Counts I–IV may not be brought against ICE. Nevertheless, for the sake of completeness, the ICE Defendants treat each claim as being brought against each ICE Defendant solely for the purpose of this motion.

or concert[ed]" with any other Defendant for any purpose. *See Gov't Emps. Ins. Co.*, 330 F. Supp. 2d at 706 (quoting Va. Code. § 18.2-499); *see supra* 4–5. Giving the Complaint the most possible liberal construction, the only relevant factual assertion as to the ICE Defendants is that "[t]hrough communications with Defendant Christopher Krupa, Haddock had advance knowledge of the date on which [PRD] would cease pricing." Compl. ¶ 53. But that assertion—accepted as true for the purpose of this motion—does nothing to suggest that the ICE Defendants had coordinated the cessation of pricing with Haddock, or that the ICE Defendants had any intent to cause injury. Indeed, the Complaint does not identify any basis to conclude that there was anything remotely wrongful about a decision to cease pricing: There is no indication that any ICE Defendant had knowledge of any tortious act taken by another Defendant, and certainly the cessation of offering prices on certain bonds is not an unlawful act. Without such allegations pled with particularity, Plaintiff's claim must be dismissed. *Aggarwal*, 2012 WL 12870349, at *2 ("This is important because plaintiffs must allege with particularity that defendants entered an agreement to achieve a shared objective.").

Even if the Complaint did contain sufficient factual allegations, Plaintiff cannot bring a claim for business conspiracy while purporting to bring only direct, nonderivative claims. The Virginia Supreme Court has unequivocally held that "[a]s a matter of law, an action under the Code §§ 18.2-499 and -500 may not embrace" claims "seek[ing] damages for injury to personal reputation and employment interests." *Andrews v. Ring*, 266 Va. 311, 319 (2003); *Shirvinski v. U.S. Coast Guard*, 673 F.3d 308, 321 (4th Cir. 2012) (no business conspiracy where plaintiff's injuries were "of a personal dimension").

## 2. The Complaint Fails To State A Claim For Civil Conspiracy

"In Virginia, the elements of a common law civil conspiracy claim are (i) an agreement between two or more persons (ii) to accomplish an unlawful purpose or to accomplish a lawful

purpose by unlawful means, which (iii) results in damage to plaintiff." *Firestone v. Wiley*, 485 F. Supp. 2d 694, 703 (E.D. Va. 2007) (citing *Glass v. Glass*, 228 Va. 39, 47 (1984)). Like statutory business conspiracy, the plaintiff must also show that an underlying tort was committed and plead the conspiracy with particularity. *SageWater, LLC v. Hossfeld*, 2024 WL 3354711, at *8 (E.D. Va. June 20, 2024), *report & recommendation adopted*, 2024 WL 3345339 (E.D. Va. July 9, 2024); *Livia Properties, LLC*, 2015 WL 4711585, at *9.

Plaintiff's common law civil conspiracy claim fails for the same reason as his business conspiracy claim: the Complaint is devoid of any particularized facts of the ICE Defendants entering an agreement with any other Defendant to accomplish an unlawful goal or by using unlawful means. *See* Compl. ¶¶ 35–60. There are no allegations that the ICE Defendants had knowledge of any unlawful act taken by any other Defendant, or of any malicious intent. The Complaint does not identify wrongful conduct by any Defendant. The Complaint simply does not state a conspiracy claim. *See Moschetti v. Nixon Peabody, LLP*, 2024 WL 2750010, at *12 (E.D. Va. May 29, 2024) ("Plaintiff's conspiracy claim is littered with conclusory language, which is insufficient to survive Defendant's Motion."). Plaintiff's common law conspiracy claim cannot lie.

### 3. The Complaint Fails To State A Claim For Tortious Interference With A Contract

"To successfully claim tortious interference with contractual relations, a party must prove each of the following elements: (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted." *Masco Contractor Servs. E., Inc. v. Beals*, 279 F. Supp. 2d 699, 709 (E.D. Va. 2003).

"Failure to allege any specific, existing economic interest is fatal to the claim." *Id.*; *see also GTSI Corp. v. Wildflower Int'l, Inc.*, 2009 WL 2160451, at *8 (E.D. Va. July 17, 2009) (quoting *Gov't Emps. Ins. Co.,* 330 F. Supp. 2d at 705-06) ("Plaintiff[] must 'plead a specific, existing contract or expectancy with a specific party.'").

The Complaint fails to sufficiently plead any element. Plaintiff's vague references to various loans and agreements with the Lender Defendants or his guarantee-fee agreement with Live Well, Compl. ¶¶ 21–22, 26, 76, do not indicate what specific contractual interest was alleged to be interfered with by Defendants. Indeed, it is not clear from the Complaint whether Plaintiff is alleging interference with Live Well's contracts with the Lender Defendants or interference with his guarantee-fee agreement with Live Well. *See id.* ¶ 76.

Either way, the Complaint relies entirely on conclusory allegations as to the ICE Defendants' knowledge of any such agreements. *See id.* ¶¶ 25, 28. There are no *facts* alleged to support the Complaint's assumptions that the ICE Defendants knew that (i) Live Well was entering repo agreements, (ii) the repo agreements designated PRD as the pricing source for collateralized bonds, (iii) the repo agreements were collateralized by the particular bonds PRD eventually stopped pricing, or (iv) Plaintiff was a guarantor for Live Well's repo agreements. Plaintiff also fails to allege that the ICE Defendants engaged in any "intentional interference" that led to a breach or termination of any agreement. Plaintiff's claim for tortious interference with a contract must be dismissed.

### 4.     The Complaint Fails To State A Claim For Tortious Interference With Business Expectancy

To state a claim for tortious interference with business expectancy or prospective economic advantage, plaintiff must: "(1) demonstrate the existence of a business relationship or expectancy, with a probability of future economic benefit; (2) prove knowledge of the relationship or

expectancy; (3) show that it was reasonably certain that absent intentional misconduct, the claimant would have continued in the relationship or realized the expectancy; and (4) show that it suffered damages from the interference." *Masco Contractor Servs. E., Inc.*, 279 F. Supp. 2d at 709.

Plaintiff merely asserts that he "had reasonable business expectancies," without *any* details as to what those expectancies were. Compl. ¶ 80. This claim should be dismissed on that ground alone. *See Gov't Emps. Ins. Co.*, 330 F. Supp. 2d at 705 (dismissing claim when plaintiff merely pled "a general expectancy that consumers will purchase insurance from [plaintiff's] [w]ebsite"); *Moore v. United Int'l Investigative Servs., Inc.*, 209 F. Supp. 2d 611, 619–20 (E.D. Va. 2002) ("The evidence of an expectancy must establish expectancy by and between two parties at least, based upon something that is a concrete move in that direction."). Without identifying what Plaintiff's business expectation was, the Complaint certainly does not sufficiently plead that any Defendants (including the ICE Defendants) were aware of that expectancy. The Complaint also does not (and could not) plead that it would be "reasonably certain" that Plaintiff would have maintained the relationships absent any alleged intentional misconduct. To the contrary, Plaintiff's own fraudulent scheme, for which he was convicted, would almost certainly have imploded those relationships regardless of any action by Defendants. The Complaint thus fails to state a claim for tortious interference with business expectancy.

### 5. The Complaint Fails To State A Claim For Aiding And Abetting

Plaintiff brings a claim against ICE for "aiding and abetting." But it is not clear from the Complaint what conduct Plaintiff is asserting ICE aided and abetted. Generally speaking, a plaintiff successfully pleads an aiding and abetting claim by showing: "(a) a tort was committed against the plaintiff by another party; (b) the defendant knew that the other party's conduct was wrongful; (c) the defendant knowingly and substantially assisted in the commission or concealment of the tort; and (d) the plaintiff suffered economic loss as a result." *Restatement Third*

*of the Law: Liability Economic Harm* § 28. Putting aside that Plaintiff has failed to plead that any Defendant committed a tort against him, the Complaint is also bereft of any allegations related to ICE's knowledge of another party's conduct or how it knowingly or substantially assisted any party with any conduct. The Complaint's conclusory allegation that "ICE knowingly provided substantial assistance by publishing and enabling substituted pricing" is detached from any factual allegation as to ICE's relationship to PRD, how it allegedly assisted in "enabling" pricing changes, and how ICE would have known that such pricing changes were wrongful. Compl. ¶ 84. Plaintiff's aiding and abetting claim should therefore be dismissed.

### 6. The Complaint Fails To State A Claim For Unjust Enrichment

"In Virginia, a plaintiff alleging unjust enrichment must establish the following elements: '(1) a benefit conferred on the defendant by the plaintiff; (2) knowledge on the part of the defendant of the conferring of the benefit; and (3) acceptance or retention of the benefit by the defendant in circumstances that render it inequitable for the defendant to retain the benefit without paying for its value.'" *Firestone*, 485 F. Supp. 2d at 704 (citation omitted). Plaintiff does not sufficiently plead a single element.

The Complaint generally asserts that certain Defendants "received substantial benefits at Plaintiff's expense . . . including financial recoveries, enforcement leverage, loss shifting, and avoidance of market and credit risk, through the use of substituted pricing." Compl. ¶ 86. It is not clear which, if any, of these "benefits" were supposedly conferred on ICE or PRD, and it is certainly not asserted that the benefit was conferred by Plaintiff. Even if Plaintiff's threadbare pleading did suffice to establish the first element, the Complaint still contains no allegations regarding ICE's or PRD's knowledge of the benefit or why it would have been equitable to pay Plaintiff for its value. Plaintiff's unjust enrichment claim must be dismissed.

## B. Plaintiff Cannot Relitigate His Criminal Convictions In This Civil Proceeding Against The Victims Of His Crime

As a general matter, collateral estoppel bars a litigant from relitigating an issue when (1) the issue sought to be precluded is identical to one previously litigated; (2) the issue was actually determined in the prior proceeding; (3) determination of the issue was a critical and necessary part of the decision in the prior proceeding; (4) the prior judgment is final and valid; and (5) the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in the previous forum. *See, e.g.*, *Sedlack v. Braswell Servs. Grp., Inc.*, 134 F.3d 219, 224 (4th Cir. 1998). Collateral estoppel routinely precludes a criminal defendant from relitigating issues in a subsequent civil proceeding even in cases like this one, where the parties to the civil proceeding were not parties to the prior criminal prosecution. *See, e.g.*, *AvalonBay Communities, Inc. v. Willden*, 2009 WL 2431571, at *6 (E.D. Va. Aug. 7, 2009), *aff'd*, 392 F. App'x 209 (4th Cir. 2010) (applying nonmutual collateral estoppel to hold that defendant was "collaterally estopped from relitigating or otherwise challenging the facts established in the criminal proceeding" in a subsequent civil proceeding alleging claims for fraud and business conspiracy); *SEC v. Resnick*, 604 F. Supp. 2d 773, 781 (D. Md. 2009) (SEC was entitled to invoke collateral estoppel to preclude relitigation of issues resolved in defendant's prior criminal trial).

That settled rule bars the claims that Plaintiff seeks to pursue in this civil case. The gravamen of his Complaint is that the Lender Defendants, apparently with the assistance of Bloomberg L.P. and the ICE Defendants, conspired to "forc[e] Live Well into default and bankruptcy." Compl. ¶¶ 3, 28. The Government's criminal prosecution established, however, that *Plaintiff* "engaged in a multi-year scheme to fraudulently inflate the value of a portfolio of bonds used as collateral to obtain cash loans." Ex. A at 3. Plaintiff's current allegations—*viz.*, that he was in fact *the victim* of a plot by the very same lenders—would obviously have furnished a defense in

his criminal proceeding, and there can be no doubt that the criminal trial offered a full and fair opportunity to litigate the Government's allegations. Because the Complaint's factual allegations are diametrically opposed to the factual findings underlying Plaintiff's criminal convictions, Plaintiff is collaterally estopped from pursuing those allegations here. Indeed, Plaintiff even lists "continuing restitution-related enforcement harms" among his purported injuries, Compl. ¶ 61, presumably referring to a putative "injury" visited upon him by his criminal sentence. That allegation underscores the conclusion that Plaintiff's Complaint is nothing more than an impermissible effort to relitigate his criminal proceeding and shift responsibility to the victims of his crimes. The Complaint should be dismissed on that basis alone.

### C. Plaintiff Cannot Recover Derivatively For Alleged Injuries To Live Well

Even setting aside the fatal pleading failures addressed above, much of Plaintiff's Complaint is independently barred because he seeks to recover derivatively for alleged harms to *Live Well*, the company in which he was an owner, rather than any direct harm to Plaintiff. "It is considered a 'fundamental rule' that '[a] shareholder—even the sole shareholder—does not have standing to assert claims alleging wrongs to the corporation.'" *Smith Setzer & Sons, Inc. v. S.C. Procurement Review Panel*, 20 F.3d 1311, 1317 (4th Cir. 1994) (quoting *Jones v. Niagara Frontier Transp. Auth.*, 836 F.2d 731, 736 (2d Cir. 1987), *cert. denied*, 488 U.S. 825 (1988)). "The only recognized exception to this rule is when 'the injury to individual stockholders results from a special duty owed to the stockholder by the wrongdoer and having an origin independent of plaintiff's status as stockholder.'" *RBA Cap., LP v. Anonick*, 2009 WL 960090, at *2 (E.D. Va. Apr. 8, 2009) (quoting *Smith Setzer & Sons, Inc.*, 20 F.3d at 1317). No such claim exists here.

Plaintiff's attempt to plead around this fundamental issue by pointing to his personal guarantees on certain loan agreements and mischaracterizing his alleged harm as "direct, non-derivative injuries" is unsuccessful. *See* Compl. ¶¶ 1–3, 21–29. Plaintiff's status as guarantor does

not transform Live Well's defaults into a direct injury on Plaintiff: "[A] shareholder-guarantor is not a 'real party in interest' where he or she is suing not the bank [collecting on the guarantee] but rather the third party whose alleged wrongdoing is said to have driven the corporation into bankruptcy." *Labovitz v. Washington Times Corp.*, 172 F.3d 897, 902 (D.C. Cir. 1999) (internal quotations and citation omitted); *Mid-State Fertilizer Co. v. Exch. Nat'l Bank of Chicago*, 877 F.2d 1333, 1336-37 (7th Cir. 1989) ("Guarantors must be treated as creditors. . . . Those whose injury is derivative must take their place in line as creditors in the bankruptcy action.").[4]

### D.    The Statute of Limitations Bars Plaintiff's Claims

Plaintiff's claims are also barred by the statute of limitations. The statute of limitations for conspiracy in Virginia is five years. *Safe Haven Wildlife Removal & Prop. Mgmt. Experts, LLC v. Meridian Wildlife Servs. LLC*, 716 F. Supp. 3d 432, 444 (W.D. Va. 2024) (citing Va. Code § 8.01-243 and *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 543 (4th Cir. 1997)). The claim "does not accrue until the plaintiff suffers injury sufficient to give rise to the underlying tort claim," and "'only the slightest injury is required to start the running of the limitations period.'" *Id.* (internal quotations and citations omitted).

The same is true for claims of tortious interference with a contract and tortious interference with business expectancy, which are subject to a five-year statute of limitations that accrues on the date that the injury, however slight it may be, occurs. *Dunlap v. Cottman Transmissions Sys., LLC*,

---

[4] The rule articulated in *Labovitz* squarely governs here, even though Plaintiff has sued the Lender Defendants that apparently enforced his personal guarantees following Live Well's defaults. The ICE Defendants did not enforce any such guarantees, so they would (if Plaintiff's claims otherwise had factual support and logical coherence) qualify as "third part[ies] whose alleged wrongdoing is said to have driven the corporation into bankruptcy." *Labovitz*, 172 F.3d at 902. Moreover, even as to the Lender Defendants, the Complaint does not suggest that there was anything independently wrongful about seeking to enforce Plaintiff's personal guarantees of Live Well's debts upon Live Well's defaults. The Complaint appears to allege that Defendants wrongfully engineered those defaults, but that would be a direct injury to Live Well and would harm Plaintiff only *indirectly* on account of his status as shareholder and guarantor.

576 F. App'x 225, 226 (4th Cir. 2014); Va. Code § 8.01-230; *Safe Haven Wildlife*, 716 F. Supp. 3d at 442–43 (quoting *Forest Lakes Cmty. Ass'n v. United Land Corp. of Am.*, 293 Va. 113, 123–24 (2017)).

The statute of limitations for unjust enrichment in Virginia is three years. *Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.*, 299 F. Supp. 2d 565, 576 (E.D. Va. 2004). The claim accrues at the time the unjust enrichment occurred: "when the defendant does not pay the expected compensation for a benefit he has obtained." *Mission Integrated Techs., LLC v. Clemente*, 158 F.4th 554, 567 (4th Cir. 2025). The time that "a party 'knew or should have known' of the unjust enrichment" is irrelevant. *Tao of Sys. Integration, Inc.*, 299 F. Supp. 2d at 576.

Under Plaintiff's version of events, any alleged wrongful conduct had to have occurred before Live Well's June 2019 bankruptcy, thus, as to the ICE Defendants, any claims related to the cessation of pricing had to have occurred while Live Well was still operating. At the latest, Plaintiff's claims accrued at the time of the bankruptcy given that Chapter 7 has the effect of rendering the company worthless and dropping shareholder value to zero as the company liquidates all assets to pay creditors. Thus, any injury occurred, at the latest, over six years before Plaintiff filed this action. Therefore, the respective statutes of limitations (three and five years) bar his claims.

While Plaintiff attempts to overcome these limitations periods by alleging that he had no information on defendants' wrongdoing until April 2021, Compl. ¶¶ 30–31, this is contradicted by the fact that all relevant facts and any alleged damage would have occurred at least by the time of Live Well's bankruptcy. Additionally, Plaintiff has not alleged any authority to support a theory that the statute of limitations should have been tolled. In short, Plaintiff's claims have long expired.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's Complaint with prejudice as to the ICE Defendants.


Dated: March 2, 2026                          Respectfully submitted,

                                          */s/ Donald Burke*

                                          Donald Burke (VSB No. 76550)
WILLKIE FARR & GALLAGHER LLP
1875 K Street, N.W.
Washington, DC 20006
Tel: (202) 303-1037
Fax: (202) 303-2000
DBurke@willkie.com

Matthew Freimuth (admitted *pro hac vice*)
Melissa Taustine (admitted *pro hac vice*)
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019
Tel: (212) 728-8000
MFreimuth@willkie.com
MTaustine@willkie.com

*Counsel for Intercontinental Exchange, Inc.,*
*Christopher Krupa and ICE Data Pricing &*
*Reference Data, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of March, 2026, I will electronically file the

foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification

of such filing (NEF) to all counsel of record and to the following:

> Michael C. Hild
> michaelchristopherhild@gmail.com
> 2302 East Marshall Street
> Richmond, VA 23223
>
> *Plaintiff, pro se*

> */s/ Donald Burke*
> Donald Burke (VSB No. 76550)
> WILLKIE FARR & GALLAGHER LLP
> 1875 K Street, N.W.
> Washington, DC 20006
> Tel: (202) 303-1037
> Fax: (202) 303-2000
> DBurke@willkie.com
>
> *Counsel for Intercontinental Exchange, Inc.,*
> *Christopher Krupa and ICE Data Pricing &*
> *Reference Data, LLC*