IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION



MICHAEL C. HILD,
    Plaintiff,

v.

Civil Action No. 3:25-cv-01050-DJN

Hon. David J. Novak

DAN FOSTER;
GLEN HADDOCK;
LAWRENCE "LARRY" MATTERA, JR.;
CHRISTOPHER KRUPA;
BLOOMBERG L.P.;
ICE DATA PRICING & REFERENCE DATA LLC
  (f/k/a Interactive Data Pricing and Reference Data LLC;
  converted from Interactive Data Pricing and Reference Data, Inc.);
INTERCONTINENTAL EXCHANGE, INC.;
INDUSTRIAL AND COMMERCIAL BANK OF CHINA FINANCIAL SERVICES LLC;
MIRAE ASSET SECURITIES (USA) INC.;
FLAGSTAR BANK, FSB;
CUSTOMERS BANK; and
DOES 1–50,

    Defendants.

---

**PLAINTIFF'S OPPOSITION TO DAN FOSTER'S MOTION TO DISMISS**

---

**INTRODUCTION**

Defendant Dan Foster moves to dismiss by recasting the First Amended Complaint ("FAC") as alleging only that he supplied "pricing inputs" to Bloomberg. See FAC ¶ 44. From that narrowing premise, he argues lack of jurisdiction, lack of standing, failure to plead conspiracy,

1

failure to plead tortious interference, and failure to plead unjust enrichment.

That premise is false.

A complaint is not speculative where it pleads concrete conduct, identifies the actors, describes the mechanism of harm, and alleges foreseeable consequences. See *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

The FAC alleges that IDC was the designated pricing source for the relevant facilities and ceased providing pricing, leaving no contractually designated successor source (FAC ¶¶ 37–38). In the absence of IDC pricing, U.S. Bank's pricing reports defaulted to Bloomberg pricing, which then became the visible and operative pricing mechanism (FAC ¶¶ 42–43). The FAC further alleges that Defendants—including Foster—participated in the pricing mechanism that generated the substituted marks that triggered margin calls, cross-defaults, guarantor exposure, and the destruction of Plaintiff's independent contractual income streams (FAC ¶¶ 44, 61–69, 70–73).

At the Rule 12 stage, the Court must accept those allegations as true and draw reasonable inferences in Plaintiff's favor.

Under that standard, Foster's motion fails.

## I. SUBJECT MATTER JURISDICTION EXISTS

### A. Diversity Is Adequately Pleaded

Foster argues that Plaintiff failed to properly plead citizenship.

The FAC expressly alleges that no Defendant is a citizen of Virginia. FAC ¶ 16. Plaintiff

contemporaneously filed a Citizenship Disclosure Statement confirming that none of the Defendants is a citizen of Virginia and identifying their respective citizenship for diversity purposes.

The FAC further alleges that Plaintiff is a Virginia resident bringing claims in his individual capacity for direct, non-derivative injuries. FAC ¶ 1. The amount in controversy exceeds $75,000 by orders of magnitude. FAC ¶ 61 (alleging compensatory damages exceeding $900,000,000, subject to trebling under Va. Code § 18.2-500).

Complete diversity is therefore adequately pleaded. Even assuming arguendo any technical pleading deficiency, 28 U.S.C. § 1653 expressly permits amendment of jurisdictional allegations. Dismissal under Rule 12(b)(1) is unwarranted.

### B. Federal Question Jurisdiction Exists in the Alternative

The FAC invokes federal jurisdiction under 28 U.S.C. § 1331 in addition to diversity. Because diversity independently supports jurisdiction, the Court need not reach the alternative basis.

## II. PLAINTIFF HAS STANDING AND ALLEGES DIRECT, NON-DERIVATIVE INJURY

Foster asserts Plaintiff lacks standing because any injury was suffered by Live Well, not Plaintiff personally.

The FAC expressly disclaims derivative claims and pleads direct personal injury:

- Plaintiff brings claims solely in his individual capacity and does not assert claims

3

belonging to Live Well or its bankruptcy estate. FAC ¶ 1.

- Defendants' conduct terminated Plaintiff's guarantee-fee income. FAC ¶ 62.
- Defendants' conduct exposed Plaintiff to personal liability under guaranteed facilities. FAC ¶ 63.
- Defendants' conduct destroyed Plaintiff's controlling ownership interest and personally held economic interests. FAC ¶¶ 64, 61.
- Restitution-related enforcement harms premised on distorted pricing continue to affect Plaintiff personally. FAC ¶¶ 65–69.

These are personal contractual and economic injuries.

Exposure under a personal guaranty is not shareholder diminution. Termination of independent contractual compensation is not corporate injury. The FAC explicitly alleges direct injury to Plaintiff, not derivative harm. FAC ¶¶ 1, 61–69.

At the pleading stage, that suffices.

## III. FOSTER'S "MERE PRICING INPUTS" CHARACTERIZATION MISREPRESENTS THE FAC

Foster asserts that the FAC alleges only that he supplied "pricing inputs" to Bloomberg. FAC ¶ 44.

That is a selective and misleading characterization.

The FAC alleges:

1. IDC was the designated pricing source and ceased providing pricing. FAC ¶¶ 37–38.
2. Bloomberg pricing was operationally substituted once IDC ceased posting values. FAC ¶ 44.
3. Defendants relied upon the substituted pricing to enforce defaults. FAC ¶¶ 46–48, 71.
4. Margin escalation and cross-default activation followed. FAC ¶¶ 61–63.
5. Plaintiff's personal guarantees were triggered and enforced. FAC ¶ 63.
6. Plaintiff's contractual income streams were terminated. FAC ¶ 62.
7. Plaintiff suffered direct personal injury. FAC ¶¶ 61–69.

Foster is alleged to have supplied pricing inputs during the substitution period that enabled Bloomberg to "generate and publish prices for HREMIC IO bonds ... once IDC ceased providing pricing." FAC ¶ 44.

Pricing inputs in this context are not clerical acts. They are the mechanism by which operative bond prices were generated. Bond prices drive margin calls. Margin calls drive defaults. Defaults trigger guarantor exposure and contractual termination.

The FAC further alleges that these acts were part of coordinated conduct and improper methods, including operational substitution and reliance on non-designated pricing sources. FAC ¶ 71.

At the pleading stage, Plaintiff need not prove the full mechanics of coordination or quantify Foster's precise role in the pricing ecosystem. It is sufficient to plausibly allege participation in the substitution mechanism that foreseeably triggered the cascade of consequences described in FAC ¶¶ 61–69.

The FAC does so.

Foster repeatedly characterizes the FAC as "sparse" and "conclusory," but that framing misstates what Rule 8 requires. A complaint need not allege detailed evidentiary facts or prove the mechanics of coordination; it must allege sufficient factual content to allow the Court to draw a reasonable inference of liability. The FAC does precisely that. It identifies the specific pricing mechanism at issue (FAC ¶ 44), the timing and nature of the pricing substitution (FAC ¶¶ 37–38, 42–43), the enforcement consequences that followed (FAC ¶¶ 61–63), and the direct personal injuries sustained (FAC ¶¶ 61–69). These are concrete factual allegations, not formulaic recitations of elements.

Ultimately, Foster's argument conflates evidentiary proof with pleading sufficiency. The FAC does not allege abstract suspicion; it alleges specific operational conduct (FAC ¶¶ 44, 60–63), identifies the pricing mechanism used (FAC ¶ 44), describes the economic consequences (FAC ¶¶ 61–69), and alleges coordinated reliance by counterparties (FAC ¶ 71). Whether Foster disputes those allegations is immaterial at this stage. The only question is plausibility, and the FAC easily clears that threshold.

Nothing in Rule 8 requires Plaintiff to plead internal communications among Defendants prior to discovery.

## IV. THE FAC PLAUSIBLY ALLEGES VIRGINIA BUSINESS CONSPIRACY AND COMMON-LAW CONSPIRACY

Foster argues Plaintiff failed to plead concerted action, legal malice, underlying tort, and causation.

Each assertion is contradicted by the FAC.

## A. Concerted Action

The FAC alleges:

- Defendants "combined and agreed to willfully and maliciously injure Plaintiff." FAC ¶ 70.
- Defendants employed improper methods, including coordinated pricing cessation and operational substitution of Bloomberg pricing. FAC ¶ 71.
- Defendants committed overt acts in furtherance of the conspiracy in Virginia. FAC ¶ 72.

Those allegations go beyond conclusory labels and describe coordinated operational conduct tied to specific pricing events.

At Rule 12, conspiracy may be pled circumstantially. FAC ¶¶ 60–72 sufficiently allege unity of design and concerted action.

The FAC identifies the relevant pricing period (FAC ¶¶ 37–38), the operative substitution mechanism (FAC ¶ 44), and the enforcement conduct that followed (FAC ¶¶ 61–63, 71), providing sufficient temporal and contextual detail to satisfy Virginia's pleading standards.

## B. Legal Malice

Legal malice requires intentional conduct undertaken without lawful justification and with knowledge that injury will result.

The FAC alleges Defendants knowingly relied upon substituted pricing to enforce defaults in facilities structured with cross-default provisions and personal guarantees. FAC ¶¶ 61–63, 71.

7

Knowingly participating in conduct that foreseeably triggers guarantor exposure and destruction of independent contractual income satisfies legal malice at the pleading stage. FAC ¶¶ 62–63, 70–73.

**C. Underlying Tort**

The FAC pleads tortious interference and improper methods. FAC ¶¶ 75–76. Specifically:

- Plaintiff had valid contractual relationships, including guarantee-fee agreements. FAC ¶ 76.
- Defendants employed improper methods including coordinated substitution and reliance on substituted pricing. FAC ¶ 71.
- Defendants' acts caused direct injury. FAC ¶ 73.

Those allegations sufficiently plead underlying tortious conduct.

**D. Causation**

The FAC pleads a coherent operational sequence:

- Coordinated pricing substitution (FAC ¶¶ 44, 71),
- Margin calls and defaults (FAC ¶¶ 61–63),
- Cross-default activation and guarantor exposure (FAC ¶ 63),
- Termination of contractual income (FAC ¶ 62),

8

- Direct personal economic injury (FAC ¶¶ 61–69).

Proximate cause is ordinarily a question of fact. At the pleading stage, this alleged causal chain is plausible and foreseeable.

## V. TORTIOUS INTERFERENCE CLAIMS ARE ADEQUATELY PLED

Foster argues Plaintiff failed to plead existence of contracts, knowledge, intentional interference, improper methods, and damage.

The FAC alleges:

- Valid contractual guarantee-fee agreements. FAC ¶ 76.
- Plaintiff's personal guarantees tied to credit facilities. FAC ¶ 63.
- Defendants' knowledge of the pricing mechanics and enforcement consequences. FAC ¶¶ 60–63.
- Intentional reliance on substituted pricing to enforce defaults. FAC ¶¶ 46–48, 71.
- Direct termination of Plaintiff's income and exposure to liability. FAC ¶¶ 62–63.

Foreseeability of guarantor harm satisfies the knowledge element at the pleading stage. Participation in pricing substitution that predictably triggers defaults constitutes intentional interference. FAC ¶¶ 44, 71.

Rule 8 requires plausibility—not evidentiary detail.

## VI. UNJUST ENRICHMENT IS ADEQUATELY PLED AND NOT TIME-BARRED

### A. Accrual and Tolling

The FAC alleges concealment and operational substitution once IDC ceased providing marks. FAC ¶¶ 44, 60–61, 71.

Where unjust enrichment is tied to concealed conduct, accrual runs from discovery. Limitations is an affirmative defense and is rarely resolvable at Rule 12 unless untimeliness appears on the face of the complaint. It does not here.

### B. Benefit Conferred

Unjust enrichment requires benefit conferred, knowledge, and inequitable retention.

The FAC alleges Foster participated in pricing substitution that generated economic effects across repo facilities and enforcement actions. FAC ¶¶ 44, 71.

Economic benefit includes advantage derived from participation in the pricing ecosystem that displaced IDC and enabled reliance on substituted marks. FAC ¶¶ 44, 60–63.

At the pleading stage, Plaintiff need not quantify the benefit—only plausibly allege its existence. That standard is satisfied.

## VII. THIS ACTION IS NOT A COLLATERAL ATTACK

This action does not seek to vacate any conviction or bankruptcy ruling.

It asserts independent Virginia tort claims for direct personal injury. FAC ¶ 1.

Collateral estoppel requires identity of issues actually litigated and essential to prior judgment. That showing is not apparent on the face of the FAC.

Dismissal on preclusion grounds is improper.

## VIII. LEAVE TO AMEND IS IMPROPERLY OPPOSED

Foster seeks dismissal with prejudice.

Rule 15 embodies a liberal amendment policy. Dismissal with prejudice at the pleading stage is appropriate only where amendment would be futile.

Foster's motion rests on narrow characterizations of the FAC—not incurable legal defects.

Dismissal with prejudice is unwarranted.

## CONCLUSION

Foster's motion attempts to reduce the FAC to an allegation of "mere pricing inputs." FAC ¶ 44.

But the FAC alleges far more:

- Coordinated pricing cessation and substitution (FAC ¶¶ 44, 60–61, 71),
- Uniform reliance triggering defaults (FAC ¶¶ 46–48, 71),
- Cross-default activation and guarantor exposure (FAC ¶ 63),
- Termination of Plaintiff's contractual income (FAC ¶ 62),

- Direct personal economic injury (FAC ¶¶ 61–69),
- Conspiracy and overt acts in Virginia (FAC ¶¶ 70–73).

At the Rule 12 stage, those well-pleaded allegations must be accepted as true.

For these reasons, Defendant Dan Foster's Motion to Dismiss should be denied in its entirety.

DATED: March 9, 2026

Respectfully submitted,

_Michael C. Hild_
Michael C. Hild, pro se
2302 E. Marshall Street
Richmond, VA 23223
michaelchristopherhild@gmail.com
804.306.4314

# CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2026, I caused the foregoing Plaintiff's Opposition to Dan Foster's Motion to Dismiss to be filed with the Clerk of Court for the United States District Court for the Eastern District of Virginia. Upon filing, the Clerk of Court will enter the filing on the CM/ECF system, which will send notice of such filing to all counsel of record and parties who have appeared.

I further certify that on the same date, I served a copy of this filing by electronic mail on counsel who have appeared in this action.

_/s/ Michael C. Hild_

Michael C. Hild

Plaintiff, pro se

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
___Richmond___ DIVISION

___Michael C. Hild___
Plaintiff(s),

v.

___Dan Foster, Et, al___
Defendant(s),

Civil Action Number: ___3:25-cv-01050-DJN___

## LOCAL RULE 83.1 (N) CERTIFICATION

I declare under penalty of perjury that:

No attorney has prepared or assisted in the preparation of ___Plaintiff's Opposition___.
(Title of Document)

___Michael C. Hild___
Name of *Pro Se* Party (Print or Type)

___Michael C Hild___
Signature of *Pro Se* Party

Executed on: ___3/9/2026___ (Date)

OR

The following attorney(s) prepared or assisted me in preparation of _____.
(Title of Document)

_____
(Name of Attorney)

_____
(Address of Attorney)

_____
(Telephone Number of Attorney)
Prepared, or assisted in the preparation of, this document.

_____
(Name of *Pro Se* Party (Print or Type)

_____
Signature of *Pro Se* Party

Executed on: _____ (Date)