IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION



MICHAEL C. HILD,
    Plaintiff,

v.

Civil Action No. 3:25-cv-01050-DJN

Hon. David J. Novak

DAN FOSTER;
GLEN HADDOCK;
LAWRENCE "LARRY" MATTERA, JR.;
CHRISTOPHER KRUPA;
BLOOMBERG L.P.;
ICE DATA PRICING & REFERENCE DATA LLC
  (f/k/a Interactive Data Pricing and Reference Data LLC;
  converted from Interactive Data Pricing and Reference Data, Inc.);
INTERCONTINENTAL EXCHANGE, INC.;
INDUSTRIAL AND COMMERCIAL BANK OF CHINA FINANCIAL SERVICES LLC;
MIRAE ASSET SECURITIES (USA) INC.;
FLAGSTAR BANK, FSB;
CUSTOMERS BANK; and
DOES 1–50,

    Defendants.

**PLAINTIFF'S OPPOSITION TO MIRAE ASSET SECURITIES (USA) INC.'S MOTION TO DISMISS**

## INTRODUCTION

Mirae Asset Securities (USA) Inc. ("Mirae") moves to dismiss under Rules 12(b)(1), 12(b)(2), and 12(b)(6). Each argument fails at the pleading stage.

1

The First Amended Complaint ("FAC") alleges coordinated pricing substitution, margin consequences, cross-default exposure tied to Plaintiff's personal guarantees, and termination of independent contractual income streams (FAC ¶¶ 21–29, 35–46, 61–69). The record further reflects sustained commercial administration and enforcement of a repurchase facility directed at a Virginia-headquartered company.

Under the governing Rule 12 standards, dismissal is unwarranted.

# I. SUBJECT MATTER JURISDICTION

## A. Diversity Jurisdiction Exists

The FAC alleges complete diversity under 28 U.S.C. § 1332(a) and an amount in controversy exceeding $75,000. Plaintiff contemporaneously filed a Citizenship Disclosure confirming that no Defendant is a citizen of Virginia.

Mirae's own Rule 7.1 disclosure confirms that it is a citizen of New York, not Virginia.

Mirae's jurisdictional challenge mirrors Defendant Haddock's assertion that Haddock is domiciled in Virginia and therefore destroys diversity. That issue is addressed in Plaintiff's Opposition to Haddock's Motion to Dismiss, supported by sworn evidence establishing Haddock's domicile in North Carolina.

At minimum, domicile disputes cannot be resolved against Plaintiff at the pleading stage. Diversity jurisdiction exists.

## B. Any Service Issue Is Being Cured

Mirae has appeared in this action, filed Rule 7.1 disclosures, sought and obtained extensions of time, and filed the present Motion to Dismiss.

To the extent Mirae challenges service of process, Plaintiff has initiated service pursuant to New York Business Corporation Law § 306 through the New York Secretary of State. Proof of service will be filed promptly upon receipt from the process server.

Service is being pursued within the time permitted by Rule 4(m). Dismissal is therefore unwarranted on that basis.

## C. Any Technical Deficiency in Jurisdictional Allegations Is Curable

Even if the Court were to find a technical pleading issue, 28 U.S.C. § 1653 permits amendment of jurisdictional allegations. Dismissal is not warranted.

## II. PERSONAL JURISDICTION OVER MIRAE

### A. Standard

At the Rule 12(b)(2) stage, Plaintiff need only make a prima facie showing of jurisdiction. The Court must resolve factual disputes in Plaintiff's favor.

### B. Purposeful Availment

Mirae entered into and actively administered a repurchase facility with Live Well Financial, Inc., headquartered in Richmond, Virginia.

3

The Master Repurchase Agreement confirms that the counterparty to the facility was Live Well Financial, Inc. (Hild Decl. ¶ 6, **Exhibit B** at 1.) The agreement was executed on behalf of Live Well by its Chief Financial Officer, Eric Rohr. (Id., **Exhibit B** at 10.) Annex II identifies Live Well's address for communications as 101 Boulevard 29, Suite 420, Richmond, Virginia 23225. (Id., **Exhibit B** at 16.) Mirae thus entered into an ongoing financing relationship requiring continuous notice, margin administration, and performance with a Virginia-based counterparty operating from Richmond.

As established in the Declaration of Michael C. Hild (**Exhibit A**):

- Live Well's executive and finance operations were located in Richmond. (Hild Decl. ¶¶ 3–5.)
- The Mirae facility was administered from Richmond. (Id. ¶¶ 7–10.)
- Margin monitoring and collateral valuation were conducted in Richmond using U.S. Bank securities clearing reports incorporating IDC and later Bloomberg pricing inputs. (Id. ¶¶ 8–10.)
- Mirae representatives repeatedly initiated communications directed to Live Well executives in Richmond concerning margin requirements, liquidity, pricing, and performance under the repurchase agreement. (Id. ¶¶ 11–14.)

The recorded discussions further reflect direct engagement concerning IDC pricing inputs and collateral valuation mechanics under the repurchase facility. (Hild Decl. ¶ 21, **Exhibit D** at 1–2.)

These were sustained, deliberate commercial interactions—not random or attenuated contacts.

4

Such sustained contractual administration and enforcement activity directed toward a Virginia-headquartered counterparty constitutes purposeful availment under Fourth Circuit precedent.

**C. Liquidity Control Structure**

As part of the repurchase arrangement, Mirae required Live Well to establish and fund a brokerage account as a condition of avoiding default. (Hild Decl. ¶ 15.) Live Well deposited funds into that account pursuant to Mirae's requirements. (Id. ¶ 16.)

Although the governing agreement limited the circumstances under which funds could be retained, Mirae exercised control over that account and withheld liquidity before ultimately returning the funds. (Id. ¶¶ 17–18.)

These facts demonstrate active commercial administration and enforcement directed at a Virginia-headquartered counterparty. The operational impact of that liquidity control was experienced at Live Well's Richmond headquarters. (Id. ¶ 19.)

Whether Mirae's conduct was contractually justified is a merits issue. For jurisdictional purposes, the relevant fact is that Mirae structured and exercised liquidity control directed at a Virginia-based business.

**D. Documentary Confirmation of Enforcement Activity**

The call transcripts reflect active lending posture and enforcement dynamics. For example, a Mirae representative stated: "…when you have a counterparty that doesn't want to lend you money against them any longer, sometimes circumstances have to change." (Hild Decl. ¶ 21, **Exhibit C** at 5.) The same call reflects Live Well's efforts to pursue asset sales in response to

Mirae's demands concerning liquidity and margin administration. (Id., **Exhibit C** at 7–8, 10–11.)

This reflects deliberate leverage and lending control—not incidental contact.

**E. Nexus**

Plaintiff's claims arise directly from:

- Margin administration under the repurchase facility;
- Pricing inputs affecting collateral valuation;
- Liquidity control and withholding;
- Enforcement communications directed into Virginia;
- Cross-default consequences tied to Plaintiff's personal guarantees.

The nexus requirement is satisfied.

**F. Constitutional Reasonableness**

Exercising jurisdiction over a sophisticated financial institution that entered into and actively administered a financing facility with a Virginia-headquartered counterparty is foreseeable and reasonable.

**G. At Minimum, Jurisdictional Discovery Is Required**

At the Rule 12(b)(2) stage, Plaintiff need only make a prima facie showing, and all conflicts in the evidence must be resolved in his favor.

## III. PLAINTIFF ALLEGES DIRECT, NON-DERIVATIVE INJURY

Mirae argues that Plaintiff's injuries are derivative of harm to Live Well and belong to the bankruptcy estate. The FAC alleges otherwise (FAC ¶¶ 21–29, 61–69).

Plaintiff alleges:

- Personal guaranty exposure tied to cross-default provisions;
- Separate guarantee-fee agreements independent of employment compensation;
- Termination of independent contractual income streams;
- Foreseeable personal liability exposure resulting from margin-driven default cascades.

Exposure under a personal guaranty constitutes direct contractual risk, not shareholder diminution. Loss of independent contractual income constitutes personal economic injury.

The FAC does not assert a claim for mere diminution in corporate value. It alleges targeted conduct foreseeably triggering Plaintiff's personal guaranty exposure and contractual income loss.

That suffices at Rule 12.

## IV. VIRGINIA BUSINESS CONSPIRACY

The FAC alleges (FAC ¶¶ 70–73):

- IDC's cessation of pricing;
- Operational substitution of Bloomberg pricing;

- Uniform lender reliance on those substituted prices;
- Foreseeable triggering of cross-defaults;
- Knowledge of Plaintiff's personal exposure.

Circumstantial coordination suffices at the pleading stage. Legal malice requires intentional, purposeful conduct without lawful justification. Knowingly participating in conduct that foreseeably triggers margin cascades and personal guarantor exposure satisfies that standard.

At the pleading stage, agreement may be inferred from circumstantial evidence, including parallel conduct combined with additional contextual facts suggesting coordination.

## V. TORTIOUS INTERFERENCE

The FAC alleges (FAC ¶¶ 76–79):

- Valid guarantee-fee agreements;
- Knowledge by Mirae of Plaintiff's personal guarantees and compensation structure;
- Intentional conduct triggering defaults and income termination;
- Improper methods including coordinated pricing substitution and liquidity leverage.

These allegations satisfy Rule 8.

## VI. CAUSATION IS PLAUSIBLY ALLEGED

Mirae isolates individual events—such as the temporary withholding and return of funds—and argues that no single act caused Live Well's shutdown. The FAC does not allege a single-act

theory of causation.

The FAC alleges a coordinated operational sequence involving (FAC ¶¶ 35–46, 61–69):

1. Cessation of designated pricing inputs;
2. Substitution of non-designated pricing;
3. Margin consequences and liquidity pressure;
4. Uniform lender reliance;
5. Cross-default activation tied to Plaintiff's personal guarantees;
6. Termination of Plaintiff's independent contractual income streams.

Plaintiff alleges that Mirae's conduct formed part of that sequence.

Whether any individual Defendant's actions were sufficient, standing alone, to cause shutdown is not the relevant inquiry at Rule 12. The question is whether Plaintiff has plausibly alleged that Mirae's conduct was a contributing factor in a foreseeable cascade of margin and cross-default consequences resulting in direct personal injury.

The FAC plausibly alleges such a chain. Competing narratives are factual disputes inappropriate for resolution on a motion to dismiss.

## VII. THIS ACTION IS NOT A COLLATERAL ATTACK

Plaintiff does not seek to vacate any criminal conviction or bankruptcy ruling. This action asserts independent Virginia tort claims involving distinct elements and distinct injuries.

## CONCLUSION

Plaintiff has established:

- Diversity jurisdiction;
- Specific personal jurisdiction over Mirae;
- Plausible tort claims;
- Direct personal injury;
- A coherent and foreseeable causal sequence.

Mirae's Motion to Dismiss should be denied in its entirety.

DATED: March 9, 2026

Respectfully submitted,

*/s/ Michael C. Hild*
Michael C. Hild, pro se
2302 E. Marshall Street
Richmond, VA 23223
michaelchristopherhild@gmail.com
804.306.4314

# CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2026, I caused the foregoing Plaintiff's Opposition to Mirae Asset Securities (USA) Inc.'s Motion to Dismiss to be filed with the Clerk of Court for the United States District Court for the Eastern District of Virginia. Upon filing, the Clerk of Court will enter the filing on the CM/ECF system, which will send notice of such filing to all counsel of record and parties who have appeared.

I further certify that on the same date, I served a copy of this filing by electronic mail on counsel who have appeared in this action.

_/s/ Michael C Hild_

Michael C. Hild

Plaintiff, pro se

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
__Richmond__ DIVISION

__Michael C. Hill__
Plaintiff(s),

v.

__Dan Foster, Et. al__
Defendant(s),

Civil Action Number: __3:25-cv-01050-DJN__

## LOCAL RULE 83.1 (N) CERTIFICATION

I declare under penalty of perjury that:

No attorney has prepared or assisted in the preparation of __Plaintiff's Opposition__.
(Title of Document)

__Michael C. Hill__
Name of *Pro Se* Party (Print or Type)

__/s/ Michael C Hill__
Signature of *Pro Se* Party

Executed on: __3/9/2026__ (Date)

OR

The following attorney(s) prepared or assisted me in preparation of _____.
(Title of Document)

_____
(Name of Attorney)

_____
(Address of Attorney)

_____
(Telephone Number of Attorney)
Prepared, or assisted in the preparation of, this document.

_____
(Name of *Pro Se* Party (Print or Type)

_____
Signature of *Pro Se* Party

Executed on: _____ (Date)